[No. F059608. Fifth Dist. Dec. 23, 2011.]

JOHN ROBINSON, Plaintiff and Appellant, v.
CITY OF CHOWCHILLA et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III. and IV. of the Discussion.

COUNSEL

Bennett & Sharpe, Barry J. Bennett, Thomas M. Sharpe, Elaine M. Yama, Heather N. Phillips and Katwyn T. DeLaRosa for Plaintiff and Appellant.

Costanzo & Associates, Neal E. Costanzo; Cota Cole and Thomas E. Ebersole for Defendants and Appellants.

OPINION

DAWSON, J.—A former chief of police sued the city that had employed him, alleging breach of contract, wrongful termination, and violations of the Public Safety Officers Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et seq.).[1]

The trial court determined that the city breached its obligations under POBRA when it removed the police chief from office without notice, a statement of reasons and an opportunity for an administrative appeal as required by section 3304, subdivision (c). The court also determined that the police chief's employment agreement automatically renewed for an additional three-year term in 2003, and the city breached the agreement when it

---

[1] All further statutory references are the Government Code unless stated otherwise.

dismissed the police chief in September 2003. The court granted defendants' motion for summary adjudication of the wrongful termination claim on the ground that the former police chief failed to comply with the claim filing requirement in the Government Claims Act.[2] (§ 810 et seq.)

First, we conclude that the trial court properly construed and applied the provisions of POBRA when it determined that the police chief had been removed from office without the requisite notice, statement of reasons, and opportunity for an administrative appeal. Second, the trial court properly interpreted the automatic renewal and notice provisions of the employment agreement when it determined those provisions permitted more than one automatic renewal and did not allow for oral notice of nonrenewal. Consequently, the court correctly found the city breached the employment contract when it terminated the police chief's employment and did not pay him the six months' severance benefits provided for in the contract. Third, the trial court properly applied the Government Claims Act when it concluded that the claim-filing requirement had not been met or waived.

The judgment will be affirmed.

## FACTS AND PROCEEDINGS

Plaintiff John Robinson is a former chief of police of the City of Chowchilla. Defendants are the City of Chowchilla (City), its city council, and the city administrator, Nancy Red.

On September 29, 1997, Robinson and City entered an employment agreement under which City retained Robinson's services as chief of police. The parties agreed Robinson was employed as chief of police pursuant to a written contract for an initial three-year term, with a 12-month probationary period. The employment agreement addressed Robinson's duties, salary, vacation, automobile, health insurance and life insurance. It also addressed renewal of the agreement, suspension, disciplinary action, termination, severance pay, and disability. In this appeal, the provisions concerning the automatic renewal of the agreement and notice are in dispute. The text of the renewal and notice provisions is set forth later in this opinion.

By March 29, 2000, neither City nor Robinson had given six months' written notice of nonrenewal to the other party. As a result, the employment agreement was renewed automatically for another three-year term.

---

[2] Traditionally, the act was referred to as the Tort Claims Act. In *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730 [68 Cal.Rptr.3d 295, 171 P.3d 20], the California Supreme Court stated it henceforth would refer to the act by the more inclusive and accurate label, "Government Claims Act." (42 Cal.4th at p. 742.) The court determined the act applied to breach of contract claims and stated that the informal short title of Tort Claims Act engendered confusion. (42 Cal.4th at p. 734.)

In late March 2003, Robinson and Red had a conversation in which she indicated that the city council wanted to renegotiate his employment agreement and would not let it renew automatically. Red testified that she prepared a letter dated March 26, 2003, to confirm their conversation and to notify Robinson that his contract would not automatically be renewed. Red testified that on Thursday, March 27, 2003, she put the letter in an envelope and took it to the police department. She stated that she either gave it to Robinson directly or put it on his desk because he was not in the office.

Robinson testified that he received no written notice in March 2003 and that the first time he saw the letter dated March 26, 2003, was on June 6, 2003, when he met with Red in her office. While in Red's office, Robinson wrote "Rcvd 6-6-03 1600 hrs" on the upper right-hand corner of the letter.

About three months later, during the afternoon of Friday, September 5, 2003, Robinson met with Red and a city attorney. Red told Robinson that the city council had decided not to renew his contract. When Robinson asked about the six months' notice and six months' severance pay, the city attorney told him the contract was expiring so the city council felt it was not required to pay it. Robinson was notified that his employment would terminate effective September 29, 2003, and was directed to remove his belongings and himself from the police department immediately. Also on September 5, 2003, City named an acting chief of police to replace Robinson effective immediately.

On September 29, 2003, Robinson's attorney sent a letter to City's mayor demanding Robinson's immediate reinstatement. The contents of the letter are described in greater detail in part IV.D., E., *post*, which are not published.

In a letter dated October 21, 2003, an attorney representing City informed Robinson's attorney that Robinson had not been terminated because his contract had expired. Based on this view, the letter asserted that Robinson was not entitled to notice under POBRA or severance pay under the terms of the contract.

On October 24, 2003, Robinson filed a petition for writ of mandate and complaint for injunctive relief, declaratory relief, and damages.

Robinson's petition for writ of mandate (first cause of action) sought to enforce rights he claimed under POBRA. Robinson alleged that defendants never provided him written notice, a statement of reasons for his termination, or an opportunity for an administrative appeal prior to his removal as police chief. Robinson alleged that these failures violated legal duties set forth in section 3304, subdivision (c).

Robinson's second cause of action requested injunctive relief under the provisions of POBRA. The third cause of action requested declaratory relief regarding the parties' rights and duties under the employment agreement. The fourth cause of action asserted defendants had breached the employment agreement. The fifth cause of action asserted City had wrongfully terminated Robinson in violation of public policy and denied him access to any administrative remedy.

The court bifurcated trial of the petition for writ of mandate and the complaint. As a result, in October 2004 the petition for peremptory writ of mandate was heard. On June 6, 2005, the trial court filed its written statement of decision on the petition. The trial court granted the writ of mandate, ordering City to provide Robinson with written notice of removal, the reasons for the removal, and an opportunity for an administrative appeal. (§ 3304, subd. (c).)

Defendants attempted to challenge the trial court's issuance of the peremptory writ of mandate through both a writ petition and an appeal filed with this court. We summarily denied the writ petition and dismissed the appeal. (*Robinson v. City of Chowchilla* (Oct. 27, 2006, F048561) [nonpub. opn.] [appeal dismissed because writ of mandate issued was not appealable under any exception to one final judgment rule].)

In February 2007, defendants filed a motion for summary adjudication. Robinson opposed the motion. In June 2007, the trial court filed an order granting the motion for summary adjudication as to the fifth cause of action (wrongful termination) on the ground that Robinson did not file any claim for damages with City as required by the Government Claims Act.

In July 2008, the trial court heard argument on the remaining causes of action. The next month, the court issued a tentative decision. After further filings and oral argument regarding the contents of the decision, the trial court issued its written statement of decision in February 2009.

The trial court found that Robinson was not given written notice of nonrenewal at least six months prior to September 29, 2003, and, therefore, the employment agreement was extended by its terms for an additional three-year term to September 2006. The court also found that City terminated Robinson's employment on September 5, 2003, and that when Robinson received written notice on June 6, 2003, the employment agreement already had been extended for another three-year term. The court concluded that Robinson's termination entitled him to six months' pay and benefits as provided in section 4.A of the employment agreement.

Subsequent disputes between the parties resulted in the trial court filing a first amended judgment in November 2009. The amended judgment addressed

Robinson's first cause of action by (1) recounting the issuance of the peremptory writ of mandate in June 2005 and the filing of defendants' return in April 2008 and (2) denying Robinson's request for monetary damages under this cause of action that would be in addition to those awarded for breach of contract. On the second (injunctive relief) and third (declaratory relief) causes of action, judgment was in favor of defendants because Robinson had an adequate remedy at law for breach of contract. On the fourth cause of action (breach of contract), the amended judgment awarded Robinson damages and prejudgment interest of approximately $50,000.

In January 2010, defendants filed an appeal from the amended judgment. Ten days later, Robinson filed a notice of cross-appeal concerning, among other things, the trial court's dismissal of his cause of action for damages for wrongful termination.

## DISCUSSION

### I. Standards of Review

After a matter has been tried to a superior court, appellate courts generally apply the substantial evidence standard to the superior court's findings on questions of fact and independently review questions of law. (See *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183] [substantial evidence rule]; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801 [35 Cal.Rptr.2d 418, 883 P.2d 960] [questions of law are subject to independent review].)

When a superior court grants a motion for summary adjudication, appellate courts conduct an independent review. (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717 [68 Cal.Rptr.3d 746, 171 P.3d 1082].) Appellate courts (1) take the facts from the record that was before the superior court when it ruled on the motion; (2) consider all the evidence set forth in the moving and opposing papers, unless the superior court sustained objections to that evidence; and (3) resolve doubts concerning the evidence in favor of the party opposing the motion. (*Id.* at pp. 716–717.)

### II. Violation of Section 3304

#### A. Robinson's Request for a Writ of Mandate

The first cause of action in Robinson's pleading alleged that defendants breached their statutory duty by removing him as police chief without providing the notice, statement of reasons, and opportunity for an administrative appeal required by section 3304, subdivision (c). To remedy this statutory

violation, Robinson requested a peremptory writ of mandate directing defendants to reinstate him, restore all of his wages and benefits, and renew the employment agreement for a three-year term ending in September 2006.

### B. *Trial Court's Decision Regarding the Writ of Mandate*

On June 6, 2005, the trial court filed its statement of decision concerning Robinson's petition for writ of mandate. The trial court's findings included the following:

"8. On September 5, 2003, [defendants] notified ·[Robinson] that [his] employment would terminate effective September 29, 2003, and directed [Robinson] to removed [*sic*] his belongings and himself from the Police Department immediately.

"9. Also on September 5, 2003, an Acting Chief of Police was named by [defendants] to replace [Robinson] effectively immediately.

"10. By the actions taken by [defendants] as described in Paragraphs 8 and 9 above, [defendants] 'removed' [Robinson] from his position as Chief of Police, as that term is used in . . . section 3304(c).

"11. At no time prior to [Robinson's] removal as Chief of Police did [defendants] provide [Robinson] with written notice, the reason or reasons for said removal, and/or an opportunity for administrative appeal, as those terms are used in . . . section 3304(c)."

The trial court concluded defendants breached the duty imposed by section 3304, subdivision (c) and ordered the issuance of a peremptory writ of mandate directing defendants to provide Robinson with written notice of his removal, the reasons for the removal, and an opportunity for an administrative appeal before the city council.

The peremptory writ of mandate implementing the statement of decision was entered on June 8, 2005. Subsequently, the trial court decided that the employment agreement had renewed automatically in 2003 and that defendants breached the renewed agreement. Ultimately, in November 2009, an amended judgment was filed that (1) stated Robinson shall have judgment against defendants on his first cause of action for a writ of mandate pursuant to the terms of the court's statement of decision filed on June 6, 2005, and (2) denied Robinson's request for damages under the first cause of action.

### C. *Proper Interpretation of the Statute*

Before discussing the statutory issues, we note that the employment agreement did not modify City's obligations under POBRA. Rather, section 6

of the employment agreement acknowledged that Robinson was covered by POBRA and stated: "Nothing in this Agreement is intended to be in conflict with [POBRA] and if there is an inconsistency, [POBRA] shall supersede this Agreement."

Defendants raise two issues of statutory construction that must be resolved before section 3304, subdivision (c) can be applied to the facts of this case. First, defendants contend that the notice and appeal provisions apply only if a trial court first determines that a police chief has a protected property or liberty interest. Second, defendants contend that a police chief is not "removed" for purposes of the statute so long as the city keeps paying his or her salary through the expiration date of the employment contract.

Section 3304, subdivision (c) provides in full:

"No chief of police may be removed by a public agency, or appointing authority, without providing the chief of police with written notice and the reason or reasons therefor and an opportunity for administrative appeal.

"For purposes of this subdivision, the removal of a chief of police by a public agency or appointing authority, for the purpose of implementing the goals or policies, or both, of the public agency or appointing authority, for reasons including, but not limited to, incompatibility of management styles or as a result of a change in administration, shall be sufficient to constitute 'reason or reasons.'

"Nothing in this subdivision shall be construed to create a property interest, where one does not exist by rule or law, in the job of Chief of Police."

### 1. *Principles governing statutory construction*

Issues of statutory construction are questions of law subject to independent review by the appellate court. (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1492 [35 Cal.Rptr.3d 596].)

A reviewing court's "fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) This task begins by scrutinizing the actual words of the statute, giving them their usual, ordinary meaning. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476 [66 Cal.Rptr.2d 319, 940 P.2d 906].)

■ When statutory language is clear and unambiguous—that is, has only one reasonable construction—courts ordinarily adopt the literal meaning of

that language. (*Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641].)

When statutory language is ambiguous, courts must " ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' " (*Day v. City of Fontana, supra*, 25 Cal.4th at p. 272.) Courts determine the apparent intent of the Legislature by reading the ambiguous language in light of the statutory scheme rather than reading it in isolation. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Thus, the ambiguous language must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. (*Ibid.*) In addition, courts may determine the apparent intent of the Legislature by evaluating the ostensible objects to be achieved by the statute and examining the statute's legislative history. (*Day v. City of Fontana, supra*, at p. 272.)

### 2. Meaning of third sentence of section 3304, subdivision (c)

The third sentence of subdivision (c) of section 3304 provides: "Nothing in this subdivision shall be construed to create a property interest, where one does not exist by rule or law, in the job of Chief of Police." Defendants present the following interpretation of this language: "The third sentence males [*sic*] clear that a determination of whether there is a property interest in the position of chief of police is a necessary prerequisite to determining whether the chief of police has been 'removed.' "

■ We disagree with this interpretation. The third sentence of subdivision (c) of section 3304 does not expressly create a condition or prerequisite to the application of the other provisions. The language stating that the subdivision does not create a property interest is not ambiguous. It cannot be construed to imply a police chief must satisfy a condition precedent (viz., having a property interest in his or her job) before being entitled to the procedural protections set forth elsewhere in the subdivision.

The Legislature included the third sentence so that the notice and administrative appeal protections given to police chiefs earlier in subdivision (c) of section 3304 would not be used to infer that police chiefs had a property interest in their job. Such an inference might be drawn because of the well-established principle that procedural due process requires notice and an opportunity to be heard before the government may deprive a person of a protected property interest. (*Mathews v. Eldridge* (1976) 424 U.S. 319, 333 [47 L.Ed.2d 18, 96 S.Ct. 893].) Because the first sentence in section 3304,

subdivision (c) provides for notice and an opportunity to be heard, courts and practitioners might have cited the foregoing due process principle and then reasoned backwards to infer the statute created a property interest in the job of police chief. The third sentence in subdivision (c) negates this argument.

█ Furthermore, defendants' interpretation would rewrite the beginning of subdivision (c) of section 3304, which provides that "[n]o chief of police may be removed . . ." without a written notice, statement of reasons, and opportunity for an administrative appeal. The phrase "no chief of police" and surrounding language does not limit the procedural protections to certain chiefs of police. Yet, defendants' position treats the phrase "no chief of police" to mean that (1) no chief of police *with a property interest in his or her job* may be removed without the required notice and other procedural protections and (2) police chiefs with no such property interest have no procedural protections. We conclude that if the Legislature had intended the notice and appeal procedures to be limited in this manner, it would have expressed such a limitation. (See Code Civ. Proc., § 1858 [when construing a statute, judge should not include what Legislature has omitted].)

█ In summary, the provisions of subdivision (c) of section 3304 are not reasonably susceptible to being interpreted to mean that the notice and administrative appeal procedures apply only if the police chief has a property interest in his or her job as police chief.

### 3. *Meaning and application of the term "removed"*

Defendants argue that the trial court misinterpreted the word "removed" when it concluded that Robinson had been removed as police chief on September 5, 2003. Defendants contend that the ordinary and generally accepted meaning of "removed" is "discharged" or "terminated." They also contend "removed" means "to force out of" employment, position or office. In defendants' view, Robinson was not "terminated" because City continued to pay him until the employment agreement expired in accordance with its own terms on September 29, 2003.

█ Our analysis begins with the plain meaning of the word "remove." Webster's Third New International Dictionary (1986) defines the verb "remove" to mean: "**3**: to force (one) to leave a place or to go away: as **a**: to dismiss from office . . . ." (*Id.* at p. 1921.) The foregoing dictionary definition provides the plain meaning of the word "remove" in the context of employment or appointed office. Consequently, it is the definition of remove that we will apply in this case. We note that this definition does not mention cessation of pay as a necessary component of removal from office. (See *Caviness v. Board of Education* (1978) 59 Ill.App.3d 28 [16 Ill.Dec. 526, 375 N.E.2d 157]

[words "removed" and "dismissed" in school code interpreted as encompassing any reduction in the extent of employment].)

Applying the foregoing definition to the facts of this case, we agree with the trial court's determination that Robinson was removed from office on September 5, 2003, despite the fact that City continued his pay and benefits through September 29, 2003. The question whether Robinson remained in office or had been removed from office for the three-and-a-half-week period in September 2003 requires the consideration of factors besides payment of salary and benefits because holding the office of chief of police involves more than receiving compensation.

On September 5, 2003, defendants directed Robinson to pick up his belongings and leave the police department immediately. City then appointed an acting chief of police in his place. These acts took away Robinson's authority to exercise the powers residing in the office of police chief as well as forced him to leave the physical office space within the police department's building. After September 5, 2003, Robinson no longer held the office of police chief because the authority and responsibilities of the police chief were no longer his. That authority and responsibility had been given to another person, the person appointed as acting chief. The acts of forcing Robinson to leave the physical office, taking the authority of police chief away from him, and giving both the physical office and the authority of police chief to someone else constitute a removal from office.

Consequently, we conclude that the trial court correctly interpreted and applied the statute when it determined that Robinson had been removed as police chief for purposes of section 3304, subdivision (c) on September 5, 2003.

Our interpretation of the verb "removed" is consistent with the purposes identified in the legislative history for section 3304, subdivision (c) as well as the general legislative findings in section 3301. An Assembly Public Safety Committee analysis of Senate Bill No. 2215 (1997–1998 Reg. Sess.) included the following background information about the protections proposed for chiefs of police:

"According to the bill's sponsor, 'Senate Bill 2215 is a very simple bill. It provides that the Chief of Police may not be disciplined without just cause. Historically, California law enforcement has been the finest in the nation precisely because the Legislature has seen the wisdom of separating police organizations from the political process. This is why police officers, once they pass probationary status, are protected from termination except for just cause.

" 'Ironically, a Chief of Police, who has reached the apex of his or her law enforcement career, reverts to the status of a mere probationary employee. In

other words, a Chief of Police may be dismissed for any reason. Senate Bill 2215 does not guarantee that police chiefs cannot be fired. If a chief fails to perform as expected, fails to follow the policy direction of the city council, or fails to properly lead the department, they can, and should be terminated or otherwise disciplined by the city council. What Senate Bill 2215 does do is protect chiefs from whimsical pressures that diminish the professionalism of the law enforcement mission.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2215 (1997–1998 Reg. Sess.) as amended May 19, 1998, p. 3.)[3]

The analysis also described instances of abuse where chiefs of police were threatened with removal for inappropriate reasons by local politicians. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 2215 (1997–1998 Reg. Sess.) as amended May 19, 1998, pp. 3–4.) In noting the arguments presented for and against the bill, the analysis included a comment from a police chief who stated the simple protections provided in the bill would help insulate chiefs from the politics in the community, which would lessen the likelihood of corruption and favoritism. (*Id.* at p. 5.)

Section 3301 includes the legislative findings that effective law enforcement depends upon stable employer-employee relations between public safety employees and their employers and POBRA helps assure stable relations, which assure that effective services are provided to all people of the state.

If we were to interpret "removed" to mean that a police chief could be deprived of the authority of the office and his or her successor installed so long as a city continued to pay the police chief's salary, then city councils could effectively end the chief's ability to enforce laws in a manner contrary to their interests and bypass the notice and statement of reasons requirement contained in section 3304, subdivision (c). In that situation, the city council would not have to take a public stand and subject its statement of reasons to the scrutiny of the electorate, which would undermine the protections given to police chiefs and allow the "whimsical pressures" referenced by the legislation's sponsor to affect law enforcement.

In summary, the trial court correctly interpreted and applied the statute when it determined that Robinson had been removed as police chief on September 5, 2003.

---

[3] Legislative committee reports are cognizable legislative history. (*Hutnick v. United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].) Furthermore, statements by a bill's sponsor appearing in a committee report have been quoted and relied upon by our Supreme Court in determining the meaning of a statute. (E.g., *Barnett v. Superior Court* (2010) 50 Cal.4th 890, 897–898 [114 Cal.Rptr.3d 576, 237 P.3d 980]; *In re Marriage of Fellows* (2006) 39 Cal.4th 179, 189 [46 Cal.Rptr.3d 49, 138 P.3d 200].)

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Robinson shall recover his costs on appeal.

Gomes, Acting P. J., and Detjen, J., concurred.

---

*See footnote, *ante*, page 368.