[No. F060571. Fifth Dist. Dec. 27, 2011.]

JOHN ROBINSON, Plaintiff and Appellant, v.
CITY OF CHOWCHILLA et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

## COUNSEL

Law Offices of Bennett & Sharpe, Barry J. Bennett, Thomas M. Sharpe, Elaine M. Yama, Heather N. Phillips, Katwyn T. DeLaRosa and Ann M. Bennett for Plaintiff and Appellant.

Costanzo & Associates, Neal E. Costanzo; Cota Cole and Thomas E. Ebersole for Defendants and Respondents.

## OPINION

**DAWSON, J.**—Plaintiff appeals from (1) an order denying him attorney fees under California's private attorney general doctrine, which is set forth in Code

of Civil Procedure section 1021.5[1] and (2) an order applying section 998 to limit his recovery of costs to those incurred prior to defendants' May 7, 2007, offer to compromise.

We conclude that this litigation, which resulted in a published decision regarding the meaning and application of Government Code section 3304, subdivision (c) (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 368 [134 Cal.Rptr.3d 687]), enforced an important right affecting the public interest and conferred a significant benefit on the general public and a large class of persons. Thus, we will reverse the denial of the motion for attorney fees and remand to the trial court for it to determine whether the "financial burden of private enforcement" justifies an award of attorney fees under section 1021.5 using the cost-benefit analysis recently approved by the California Supreme Court in *Conservatorship of Whitley* (2010) 50 Cal.4th 1206 [117 Cal.Rptr.3d 342, 241 P.3d 840].

We also conclude that (1) substantial evidence supports the trial court's finding that the offer to compromise was in fact served upon plaintiff's counsel and (2) the trial court did not abuse its discretion in determining that defendants' section 998 offer to compromise the lawsuit for approximately $61,000 was reasonable and made in good faith. Nevertheless, we will direct the trial court to vacate its order taxing costs until it has resolved the attorney fees motion, after which it may enter an appropriate order regarding the motion to tax costs.

## BACKGROUND

Plaintiff John Robinson was employed as chief of police by the City of Chowchilla for approximately six years. When his employment was ended in September 2003, Robinson sued the City of Chowchilla, its city council, and a city administrator, Nancy Red (collectively, City). Robinson alleged that City (1) violated his rights under the Public Safety Officers Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et seq.), (2) breached his employment contract, and (3) wrongfully terminated his employment in violation of public policy.

In 2005, Robinson won his POBRA claim and the trial court issued a peremptory writ of mandate, ordering City to provide Robinson with written notice of removal, the reasons for the removal, and an opportunity for an administrative appeal in accordance with Government Code section 3304, subdivision (c).

City challenged the trial court's issuance of the peremptory writ of mandate through both a writ petition and an appeal filed with this court. We

---

[1] All further statutory references are to the Code of Civil Procedure unless stated otherwise.

summarily denied the writ petition and dismissed the appeal. (*Robinson v. City of Chowchilla* (Oct. 27, 2006, F048561) [nonpub. opn.] [appeal dismissed because writ of mandate issued was not appealable under any exception to the one final judgment rule].)

In May 2007, while City's motion for summary adjudication was pending, City served Robinson's attorney with a section 998 offer to compromise the case for $61,592.47, with each party bearing its own costs. Robinson did not accept the offer.

In June 2007, the trial court granted summary adjudication in favor of City as to the fifth cause of action (wrongful termination in violation of public policy) on the ground that Robinson did not file any claim for damages with City as required by the Government Claims Act (Gov. Code, § 810 et seq.).

The remaining claims in Robinson's complaint were heard by the trial court in July 2008. In February 2009, the trial court issued a statement of decision, finding that City breached Robinson's employment contract and that Robinson was entitled to receive six months' severance pay and benefits under the terms of the contract.

In November 2009, the trial court filed a first amended judgment. With respect to Robinson's first cause of action, the amended judgment (1) stated a peremptory writ of mandate had been issued in June 2005 and City filed a return in April 2008 and (2) denied Robinson's request for monetary damages under that cause of action. As to Robinson's second (injunctive relief) and third (declaratory relief) causes of action, the amended judgment stated that, because Robinson had an adequate remedy at law for breach of contract, judgment was granted in favor of City. On the fourth cause of action (breach of contract), the amended judgment awarded Robinson damages and prejudgment interest of approximately $50,000.

This court affirmed the first amended judgment in its entirety and published a portion of the opinion concerning the interpretation and application of Government Code section 3304, subdivision (c). (*Robinson v. City of Chowchilla, supra*, 202 Cal.App.4th 368.)

## PROCEEDINGS

*Attorney Fees*

In January 2010, Robinson filed a motion for attorney fees. City filed an opposition to the motion as well as objections to the declaration submitted by Robinson's attorney in support of the motion.

In April 2010, the trial court held a hearing on the motion for attorney fees. At the beginning of the hearing, the trial court recapped the issues and ruling in the underlying action, stated the motion for attorney fees was timely, and indicated it would consider the motion on its merits. The trial court addressed the criteria for an award of attorney fees under section 1021.5 and concluded Robinson was not entitled to fees under section 1021.5. The trial court's statements regarding the criteria contained in section 1021.5 are set forth in part I.C., *post*.

In May 2010, the trial court filed a written order stating that "the motion of [Robinson] for an award of attorneys fees shall be and hereby is denied."

*Costs*

In January 2010, Robinson filed a memorandum of costs requesting $6,801.24. Later that month, City filed a motion to strike or tax costs. The motion asserted, among other things, that all claimed costs that were incurred on or after May 7, 2007, were not recoverable because City's section 998 offer to compromise the case for over $61,000 exceeded the judgment for $50,140 that Robinson subsequently obtained.

In March 2010, Robinson filed an opposition to the motion to strike or tax costs. Robinson asserted that the offer to compromise had not been served on his attorney. Robinson also asserted that City's offer was not a good faith offer and, therefore, did not qualify as a valid offer under section 998.

On May 20, 2010, the trial court denied the motion to strike the memorandum of costs and granted the motion to tax costs. The court found that the offer to compromise had been served on May 7, 2007, and concluded that costs incurred after that date would be taxed.

*Appeal*

On June 22, 2010, Robinson filed a notice of appeal regarding the denial of his motion for attorney fees and the order granting City's motion to tax costs.

In January 2011, Robinson requested that this court take judicial notice of the entire record on appeal in *Robinson v. City of Chowchilla, supra*, 202 Cal.App.4th 368. City filed a written statement of nonopposition. As is common in subsequent appeals concerning attorney fees or costs, we issued an order taking judicial notice of the appellate record generated in the appeal concerning the underlying claims. (E.g., *Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 45 [115 Cal.Rptr.3d 416] [appeal concerning

attorney fees]; *Wagner Farms, Inc. v. Modesto Irrigation Dist.* (2006) 145 Cal.App.4th 765, 768, fn. 3 [52 Cal.Rptr.3d 683] [appeal concerning award of costs].)

## DISCUSSION

### I. *Motion for Attorney Fees*

#### A. *Overview of Section 1021.5*

■ Section 1021.5 codifies California's version of the private attorney general doctrine, which is an exception to the usual rule that each party bears its own attorney fees. (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882].) The purpose of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 [21 Cal.Rptr.3d 331, 101 P.3d 140].) The portion of section 1021.5 relevant to this appeal states: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

■ This statutory language can be divided into the following separate elements. A superior court may award attorney fees to (1) a successful party in any action (2) that has resulted in the enforcement of an important right affecting the public interest if (3) a significant benefit has been conferred on the general public or a large class of persons, (4) private enforcement is necessary because no public entity or official pursued enforcement or litigation, (5) the financial burden of private enforcement is such as to make a fee award appropriate,[2] and (6) in the interests of justice the fees should not be paid out of the recovery.

■ The Legislature linked the criteria in section 1021.5 with the word "and." As a result, courts have interpreted section 1021.5 to require that each

---

[2] We have separated "necessity" from "financial burden" because, as recently recognized by the California Supreme Court, they are two separate issues. (*Conservatorship of Whitley, supra,* 50 Cal.4th at p. 1214.)

element be satisfied to justify an award of attorney fees. (*County of Colusa v. California Wildlife Conservation Bd.* (2006) 145 Cal.App.4th 637, 648 [52 Cal.Rptr.3d 1].) Thus, to win his appeal outright, Robinson must demonstrate that all of the enumerated elements were satisfied in this case. Conversely, the trial court's order denying the motion for attorney fees will be upheld if we determine that any one of the elements is missing.

B. *Standard of Review*

The proper standard of review applicable to a superior court's ruling on a motion for attorney fees under section 1021.5 was addressed recently by the California Supreme Court in *Conservatorship of Whitley, supra,* 50 Cal.4th 1206. The court stated that the normal standard of review is abuse of discretion, but that de novo review is warranted where the determination of whether the statutory criteria were satisfied amounts to statutory construction and a question of law. (*Id.* at p. 1213.)

Because of the prominence of legal questions in applying the criteria of section 1021.5, some appellate courts have conducted their review using a two-step approach. First, the appellate court considers whether the superior court applied the proper legal standards in reaching its determination. (*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1344 [39 Cal.Rptr.3d 550].) If the superior court's order is not consistent with the applicable principles of law, the order necessarily falls outside the scope of the superior court's discretion. (*Ibid.*) In completing this step of the inquiry, an appellate court must pay particular attention to the superior court's stated reasons for denying fees. (*Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499, 544 [63 Cal.Rptr.2d 118].)

Second, if the superior court applied the proper legal standards, the appellate court determines whether the result was within the range of the superior court's discretion—that is, whether there was a reasonable basis for the decision. (*Lyons v. Chinese Hospital Assn., supra,* 136 Cal.App.4th at p. 1344.) The range of discretion granted to superior courts by section 1021.5's use of the permissive term "may" is limited. (*Lyons,* at p. 1344.) Specifically, attorney fees must be awarded when the statutory criteria are met unless special circumstances render such an award unjust. (*Ibid.*) This limitation on the superior court's discretion and the fact that the application of the statutory criteria often presents reviewing courts with questions of law are the reasons for the number of appellate decisions in which a superior court's denial of attorney fees under section 1021.5 has been reversed. (E.g., *Conservatorship of Whitley, supra,* 50 Cal.4th 1206; *Baggett v. Gates* (1982) 32 Cal.3d 128 [185 Cal.Rptr. 232, 649 P.2d 874] (*Baggett*); *Protect Our Water v. County of Merced* (2005) 130 Cal.App.4th 488 [30 Cal.Rptr.3d 202]

[denial of attorney fees reversed; remanded to trial court to determine amount of fees to be awarded]; *Otto v. Los Angeles Unified School Dist.* (2003) 106 Cal.App.4th 328 [130 Cal.Rptr.2d 512] (*Otto*) [same]; *Henneberque v. City of Culver City* (1985) 172 Cal.App.3d 837 [218 Cal.Rptr. 704] [same].)

## C. *The Trial Court's Decision Denying Attorney Fees*

Our inquiry into whether the trial court applied the proper legal standards begins by examining the trial court's decision and its rationale. The trial court's one-page written order denying the motion for attorney fees does not state how the court applied any of the criteria contained in section 1021.5. It simply states "that the motion of [Robinson] for an award of attorneys fees shall be and hereby is denied."

The transcript for the hearing on the motion provides insight into the trial court's application of section 1021.5's criteria. At the opening of the hearing, the trial court advised the parties of its tentative views, stating that the lawsuit was primarily a contract action and the contract contained no attorney fees provision. The court also stated that Robinson brought the action primarily to either retain his position or seek damages for a breach of contract. The trial court referenced *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629 [71 Cal.Rptr.2d 632] (*Flannery*)[3] and addressed some of the criteria in section 1021.5 as follows:

". . . I can't find ultimately that this was based on an important right or a significant benefit as stated in *Flannery*. While [the] plaintiff's lawsuit was based on the important right to be free from unlawful discrimination, citing from *Flannery* page 637, its primary effect was the [v]indication of [the plaintiff's] own personal right and economic interest.

"And I think ultimately, on balance, the Court does have to find that here the ultimate primary effect of this lawsuit was to vindicate the—primarily the financial interest of [Robinson]. So the Court does not find ultimately for [Robinson] for fees on [section] 1021.5 . . . ."

After Robinson's attorney presented his argument, the trial court again referenced *Flannery* and expressed doubt as to whether it could find that a

---

[3] The *Flannery* case involved a traffic officer who sued the California Highway Patrol, alleging harassment and wrongful termination due to gender-based discrimination and retaliation for an earlier discrimination claim. (*Flannery, supra,* 61 Cal.App.4th at p. 632.) In *Flannery*, the appellate court concluded that the plaintiff's lawsuit was based on an important right, but the lawsuit's primary effect was the vindication of her own personal rights and economic interest, and the evidence did not support a finding that the lawsuit conferred a significant benefit on the general public or a large class of persons. (*Id.* at p. 637.) As a result, the appellate court determined that the fee award could not be upheld under section 1021.5. (*Flannery*, at p. 637.)

significant benefit had been conferred to the general public or a large class of persons. Near the close of the hearing, the court identified the issue as whether existing case law stood for the proposition that any violation of POBRA was sufficient to implicate an important right. Also, the court reiterated its concern that the action did not affect the general public or a large class of persons. The court stated that it realized police chiefs are a large class of persons, but viewed the specific violation in this case as "very, very narrow." As a result, the court stated it would follow *Flannery* and deny the request for attorney fees.

### D. *Success*

The threshold requirement for a fee award under section 1021.5 is that the fee applicant must be a "successful party." (*Protect Our Water v. County of Merced, supra,* 130 Cal.App.4th at p. 493.) In this case, Robinson obtained (1) a peremptory writ of mandate that required City to provide him with notice of removal, a statement of reasons, and an opportunity for an administrative appeal and (2) a final judgment awarding him damages for breach of contract. Based on the actions City was required to perform pursuant to the writ of mandate and the damages it was required to pay under the judgment as a result of Robinson prevailing on some of his claims, we conclude as a matter of law that Robinson was a successful party. (See *Urbaniak v. Newton* (1993) 19 Cal.App.4th 1837, 1843 [24 Cal.Rptr.2d 333] [success determined by the action or cessation of action produced by the judgment, such as specific performance or payment of damages].)

The fact that Robinson did not obtain all of the relief he sought in his original pleading does not lead to the conclusion that City, rather than Robinson, was the successful party in this litigation. Instead, a plaintiff's partial success is a factor considered in determining the amount of any fee award. (*Sokolow v. County of San Mateo* (1989) 213 Cal.App.3d 231, 249 [261 Cal.Rptr. 520] ["a reduced fee award is appropriate when a claimant achieves only limited success"].)

### E. *Important Right Affecting the Public Interest*

In *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200] (*Woodland Hills*), the California Supreme Court stated that both constitutional and statutory rights are capable of qualifying as "important" for purposes of section 1021.5, but not all statutory rights are important. The court indicated that section 1021.5 "directs the judiciary to exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved." (*Woodland Hills,* at p. 935.) The strength or societal importance of a particular right generally is

determined by realistically assessing the significance of that right in terms of its relationship to the achievement of fundamental legislative goals. (*Id.* at p. 936.)

Our inquiry into the importance of the rights set forth in POBRA and the corresponding legislative goals is relatively easy because of (1) the Legislature's express findings and declarations and (2) prior case law. Section 3301 of the Government Code provides: "The Legislature hereby finds and declares that the rights and protections provided to peace officers under this chapter constitute a matter of statewide concern. The Legislature further finds and declares that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers. In order to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be applicable to all public safety officers, as defined in this section, wherever situated within the State of California."

The express legislative findings have been relied upon by other appellate courts in determining that procedural rights provided in POBRA are "important" for purposes of section 1021.5.

For example, in *Baggett, supra*, 32 Cal.3d 128, four police officers sued the City of Los Angeles and its police chief because they had been reassigned to lower paying positions after an internal investigation into alleged misconduct without being given an opportunity for an administrative appeal. (*Id.* at p. 133.) The California Supreme Court reviewed the case and concluded that (1) POBRA applied to charter cities such as Los Angeles and its application did not violate the home rule provisions of the California Constitution, (2) Government Code sections 3303 and 3304 provide a right to an administrative appeal to police officers who are reassigned to lower paying positions, and (3) the police officers were entitled to an award of attorney fees under section 1021.5. (*Baggett*, at pp. 140, 141, 143.) The court concluded that "the trial court's refusal to award fees was an abuse of discretion and its denial order must be reversed." (*Id.* at p. 144.)

In *Baggett*, our Supreme Court concluded that the basic rights and protections of POBRA were "matters of statewide concern. It follows that the rights vindicated by plaintiffs are sufficiently 'important' to justify an attorney fee award." (*Baggett, supra*, 32 Cal.3d at p. 143.) The "matters of statewide concern" language used by the court tracks a legislative finding in Government Code section 3301.

The Supreme Court's conclusion regarding the importance of the basic rights and protections of POBRA has been followed by the Courts of Appeal

in a number of cases. For instance, in *Otto, supra*, 106 Cal.App.4th 328, a public safety officer's litigation resulted in a decision that a written memorandum placed in the officer's personnel file constituted punitive action and triggered the right to an administrative appeal under POBRA. (*Otto, supra*, at p. 334.) Based on Government Code section 3301 and the Supreme Court's decision in *Baggett*, the court concluded that the POBRA right to an administrative appeal was sufficiently "important" to justify an award of attorney fees. (*Otto, supra*, at p. 334.) As a result, the appellate court reversed the trial court's denial of attorney fees and remanded the matter for a determination of the amount of the fees. (*Id.* at p. 335.)

Similarly, in *Aguilar v. Johnson* (1988) 202 Cal.App.3d 241 [247 Cal.Rptr. 909], a police officer sought a writ of mandate directing the chief of police to abide by Government Code sections 3305 and 3306, which are part of POBRA, and notify officers of a citizen complaint and provide them the right to comment. The trial court denied the writ. (*Aguilar v. Johnson, supra*, at p. 245.) This court reversed and addressed the officer's request for attorney fees under section 1021.5. (*Aguilar*, at pp. 253–254.) We considered and rejected the argument that the rights vindicated by the plaintiff in no way approached the importance of those dealt with in *Baggett*. (*Aguilar*, at p. 252.) Like *Otto*, our conclusion regarding the importance of these procedural rights was based on the Supreme Court's decision in *Baggett* and Government Code section 3301. (*Aguilar v. Johnson, supra*, at pp. 246–247, 252.)

In *Henneberque v. City of Culver City, supra*, 172 Cal.App.3d 837, a police officer sued because he had been denied an administrative appeal after a punitive demotion. (*Id.* at pp. 839–840.) The trial court ruled he had a right to an administrative appeal, but denied his request for backpay and attorney fees. The Court of Appeal reversed the trial court's denial of backpay and attorney fees. (*Id.* at p. 847.) The court quoted the *Baggett* decision at length, concluded the *Baggett* analysis applied to the situation before it, and further concluded the police officer satisfied all of the criteria of section 1021.5. (*Henneberque v. City of Culver City, supra*, at pp. 846–847.) Consequently, the appellate court stated the trial court abused its discretion in denying attorney fees. (*Id.* at p. 847.)

■ Based on the foregoing authority regarding the importance of the rights and protections set forth in POBRA, we conclude that a police chief's right to notice, a statement of reasons, and an opportunity for an administrative appeal prior to removal provided by Government Code section 3304, subdivision (c) is an "important right affecting the public interest" for purposes of section 1021.5.

We do not believe that *Flannery, supra,* 61 Cal.App.4th 629 supports the position that Robinson's lawsuit did not enforce an important right affecting the public interest. First, as acknowledged by the trial court, the appellate court in *Flannery* concluded that the "plaintiff's lawsuit was based on the important right to be free from unlawful discrimination . . . ." (*Flannery, supra,* at p. 637.) Thus, *Flannery* itself did not set forth an analysis that leads to the conclusion that a particular statutory right was not important. Second, *Flannery* did not involve a claim under POBRA; instead, it involved a claim of gender discrimination and retaliation. Consequently, *Flannery* is not authority for the proposition that procedural protections given to peace officers and police chiefs by POBRA are not important rights affecting the public interest. The importance of those procedural protections must be determined by employing the test for importance set forth in *Woodland Hills.* Under that test, the legislative goals underlying the rights set forth in Government Code section 3304, subdivision (c) must be considered and the relationship of those rights and legislative goals assessed. (*Woodland Hills, supra,* 23 Cal.3d at p. 935.)

█ We apply the test from *Woodlands Hills* in light of the published case law discussing the importance of the rights contained in POBRA and conclude there is no reasonable basis for determining that the statutory right to notice, a statement of reasons, and an opportunity for administrative appeal that Robinson enforced was not "an important right affecting the public interest" under section 1021.5. Consequently, the motion for attorney fees cannot be denied on the ground that Robinson failed to satisfy the "important right" criterion of section 1021.5.

### F. Significant Benefit to the General Public or a Large Group

#### 1. Trial court's application of "significant benefit" criterion

The trial court's statements at the hearing indicate that it relied upon *Flannery* to determine that Robinson's lawsuit did not confer a significant benefit on the general public or a large class of persons. The court found that "the ultimate primary effect of this lawsuit was to vindicate . . . primarily the financial interest of [Robinson]." Also, it expressly stated that "police chiefs are a large class of persons,"[4] but described the specific violation as very narrow. These statements indicate that the court concluded the decision was so narrow that it did not provide police chiefs as a class with a "significant benefit."

---

[4] At the hearing on the attorney fees motion, counsel for Robinson asserted that there were approximately 1,400 police chiefs in the state who would benefit from the trial court's decision regarding POBRA's removal provision.

### 2. *Contentions of the parties*

Robinson contends the trial court's determination is erroneous because it fails to apply long-standing precedent regarding the benefits derived *by the public* as well as public safety officers from the enforcement of POBRA. In contrast, City contends that the benefits of the litigation are personal to Robinson and the judgment did not benefit police chiefs across the state because it established no binding precedent regarding how Government Code section 3304, subdivision (c) should be interpreted.

### 3. *Legal test for a significant benefit to a large class of persons*

■ Not long after section 1021.5 became effective on January 1, 1978, the California Supreme Court addressed how the statute's criteria should be interpreted and applied. (See *Woodland Hills, supra*, 23 Cal.3d 917.) The court addressed the "significant benefit" criterion by noting that the statute explicitly referred to " 'pecuniary or nonpecuniary' " benefits. (*Id.* at p. 939.) From this statutory language, the court concluded that an award of fees was not foreclosed by the fact that the benefits from the action had no readily ascertainable economic or monetary value. (*Ibid.*) In addition, the court stated that "the 'significant benefit' that will justify an attorney fee award need not represent a 'tangible' asset or a 'concrete' gain but, in some cases, may be recognized simply from the effectuation of a fundamental constitutional or statutory policy." (*Woodland Hills, supra*, at p. 939.) The court explained: "Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. Both the statutory language (*'significant* benefit') and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation. We believe rather that the Legislature contemplated that in adjudicating a motion for attorney fees under section 1021.5, a trial court would determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Woodland Hills, supra*, 23 Cal.3d at pp. 939–940; see also *Concerned Citizens of La Habra v. City of La Habra* (2005) 131 Cal.App.4th 329, 335 [31 Cal.Rptr.3d 599].)

■ The foregoing reference to "a realistic assessment, in light of all the pertinent circumstances" is noteworthy in this case because the trial court performed its assessment of the benefits of Robinson's action without access to "all [of] the pertinent circumstances" now available. Specifically, the trial court did not know this litigation would produce a published decision regarding the meaning of the word "removed" in Government Code section

3304, subdivision (c). (See *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 12–14 [232 Cal.Rptr. 697] [published opinion announcing a rule not addressed in prior published decisions relevant to both "important right" and "significant benefit" requirements].)

The application of the "significant benefit" criterion in this case is affected by the change in pertinent circumstances caused by the published decision. To illustrate this point, we will review some of the attorney fee cases involving a published decision addressing the application of POBRA.

In *Baggett, supra,* 32 Cal.3d 128, the California Supreme Court decided that the police officer's lawsuit satisfied the "significant benefit" criterion of section 1021.5. The court's decision in that case established that (1) POBRA applied to charter cities and (2) police officer reassignments that resulted in loss of pay were punitive actions entitling the officers to administrative appeals. (*Baggett,* at pp. 140, 141.) The court concluded important rights were vindicated and then stated: "Moreover, it can scarcely be contended that plaintiffs' litigation has not conferred a 'significant benefit' on the 'general public.' Since enforcement of the Bill of Rights Act should help to maintain stable relations between peace officers and their employers and thus to assure effective law enforcement, plaintiffs' action directly inures to the benefit of the citizenry of this state. [Citation.] No one can be heard to protest that effective law enforcement is not a 'significant benefit.' " (*Baggett, supra,* 32 Cal.3d at p. 143.)

 Since the *Baggett* decision in 1982, the Courts of Appeal have issued a number of decisions concluding that a peace officer's lawsuit resulting in a published decision clarifying the procedural protections contained in POBRA conferred a significant benefit on the general public or a large class of people.

For example, in *Mounger v. Gates* (1987) 193 Cal.App.3d 1248 [239 Cal.Rptr. 18], a police officer and his union filed a lawsuit alleging his rights under POBRA were violated when he was interrogated during a misconduct investigation without certain procedural protections set forth in Government Code section 3303. (*Mounger,* at pp. 1252–1253.) The trial court sustained a demurrer to the complaint on the ground that the police officer had not exhausted his administrative remedies. (*Id.* at p. 1253.) The appellate court reversed and directed the trial court to deny the demurrer. (*Id.* at p. 1260.)

The appellate court in *Mounger v. Gates* addressed whether the police officer was entitled to attorney fees under section 1021.5 for the attorneys' work on appeal. The court concluded that the "important right affecting the public interest" criterion had been satisfied because its decision reversing the

demurrer made clear that public safety officers (1) do not have to exhaust administrative remedies before seeking judicial relief for alleged violations of Government Code section 3303 and (2) could challenge departmental disciplinary actions in administrative proceedings while simultaneously pursuing judicial remedies for procedural violations. (*Mounger v. Gates, supra*, 193 Cal.App.3d at p. 1259.) The court also concluded its decision benefited not only the plaintiff police officer "but also all public safety officers in the state. This group in itself represents a large class of persons. But beyond that, as the Supreme Court observed in *Baggett*, the citizenry as a whole benefits from a decision like this which serves the legislative purpose of promoting stable employer-employee relations in public safety organizations. [Citation.]" (*Mounger*, at p. 1259.) The appellate court did not decide the "financial burden of private enforcement" issue and remanded the matter to the trial court with directions for it to determine the remaining elements of the attorney fee claim and, if appropriate, the amount to be awarded as appellate fees. (*Id.* at p. 1260.)

Other cases involving a published opinion in which the appellate court determined that a significant benefit had been conferred on the general public or a large group of persons as a result of enforcing procedural protections in POBRA are *Otto, supra*, 106 Cal.App.4th 328 (officer has right to administrative appeal when negative memorandum is placed in personnel file), *Aguilar v. Johnson, supra*, 202 Cal.App.3d 241 (officer has right to notice and comment on citizen complaint placed in personnel file), and *Henneberque v. City of Culver City, supra*, 172 Cal.App.3d 837 (officer has right to administrative appeal after punitive demotion).

Based on *Baggett* and the decisions of the Courts of Appeal that address whether enforcing a procedural protection in POBRA provides a significant benefit to a large group of persons, we conclude that Robinson's lawsuit satisfied the "significant benefit" element of section 1021.5. The trial court has already found that police chiefs constitute a large class of persons under section 1021.5. We conclude that the published decision regarding the meaning and application of the term "removed" in Government Code section 3304, subdivision (c) benefits that large class as well as the citizenry of the state.

The last point we address with reference to section 1021.5's requirement concerning a significant benefit to the general public or a large class of persons is City's argument regarding the "primary object of the case" and the related finding below that "the ultimate primary effect of this lawsuit was to vindicate . . . primarily the financial interest of [Robinson]." The finding appears to be related to the following statement from *Flannery*: "When the record indicates that the *primary effect of a lawsuit* was to advance or

vindicate a plaintiff's personal economic interests, an award of fees under section 1021.5 is improper." (*Flannery, supra,* 61 Cal.App.4th at p. 635, italics added.)

 This language from the *Flannery* decision is a concern because, when taken out of the factual context of that case, it might be read to imply that a plaintiff is never entitled to fees under section 1021.5 when the primary effect of the lawsuit is to advance his or her personal economic interests, even if the lawsuit's secondary effect confers a significant benefit on a large class of persons and the other criteria of section 1021.5 are satisfied. Such a reading would be inconsistent with the express requirements of the statute as there is no clause or words in section 1021.5 that requires the benefit conferred on a large class of persons to be the *primary* effect of the litigation. Furthermore, our Supreme Court has mentioned the language quoted from *Flannery* by stating that "*Flannery* merely held that a plaintiff who enforces a statutory right *is not necessarily entitled* to section 1021.5 fees when the primary effect of the suit is to vindicate an individual economic interest." (*Graham v. DaimlerChrysler Corp., supra,* 34 Cal.4th at p. 578, fn. 9, italics added.) The high court's use of the phrase "not necessarily entitled" qualifies or limits the language used in *Flannery* and leaves open the possibility that a fee award could be justified in a situation where the secondary impact of the litigation satisfies all of the criteria contained in section 1021.5.

We recognize the *Flannery* court's use of the "primary effect" term might have been its short-hand way of combining its conclusions regarding the "significant benefit" criterion and the "financial burden of private enforcement" criterion, rather than creating a nonstatutory condition to an award of fees. Practitioners are cautioned about using the "primary effect" language as a substitute for analyzing the criteria in section 1021.5 separately.[5] When each of the criteria is met, the fact the primary effect of the action was to vindicate a plaintiff's personal economic interests does not foreclose an award of attorney fees. Thus, arguments regarding the "primary objective" or "primary effect" of the litigation might best be confined to cases where fees are sought under the catalyst theory. (See *Lyons v. Chinese Hospital Assn.,*

---

[5] If the primary effect test truly created a bar to the award of attorney fees, it would be difficult to apply the requirement in a situation where the express criteria of section 1021.5 had been satisfied. How would a court go about deciding whether the litigation's impact on the plaintiff's finances was the primary effect or whether the significant benefit conferred on the general public was the primary effect? The answer to this question would change depending on the perspective adopted by the court. From the plaintiff's point of view, the financial impact would probably be the foremost concern. In contrast, the general public might be indifferent to the plaintiff's financial situation, but would care more about the general benefit affecting their own interests.

*supra*, 136 Cal.App.4th at p. 1346 [argument regarding "primary" litigation aim was based on language from catalyst cases where no judicial relief was obtained].)

### G. *Necessity of Private Enforcement*

In *Conservatorship of Whitley, supra*, 50 Cal.4th at page 1217, the California Supreme Court indicated that the necessity of private enforcement required courts to consider only one fact—the availability of public enforcement.

In this case, no government action was being taken to vindicate Robinson's rights. First, the Attorney General's Office was not involved in the litigation. Second, the governmental entity subject to Government Code section 3304, subdivision (c) vigorously denied it had any responsibility under the statute. Therefore, private enforcement was Robinson's only realistic way to enforce his POBRA rights. (See *Conservatorship of Whitley, supra*, 50 Cal.4th at p. 1215 ["necessity" looks to the adequacy of public enforcement].)

### H. *Financial Burden of Private Enforcement*

The trial court's written order does not state how it applied any of the criteria, including the "financial burden of private enforcement" criterion, contained in section 1021.5. Also, the statements the trial court made at the hearing on the motion for attorney fees are inconclusive about whether the court reached this criterion and, if so, what its determinations were.

In any event, when the trial court made its decision in April 2010, it did not have the benefit of the Supreme Court's November 2010 decision in *Conservatorship of Whitley, supra*, 50 Cal.4th 1206, which addressed in detail how the "financial burden of private enforcement" criterion should be applied. The Supreme Court acknowledged the general principle adopted in *Woodlands Hills* that an award of attorney fees is appropriate when the cost of the claimant's legal victory transcends his or her personal interest and places a burden on the claimant out of proportion to his or her individual stake in the matter. (*Whitley, supra*, at p. 1215.) The court also stated that the requirement focuses not only on the financial burdens of the litigation, but also the financial incentives. (*Ibid.*)

Our Supreme Court adopted a specific method for evaluating the financial burdens and incentives involved in pursuing a lawsuit—namely, a cost-benefit analysis in which the expenses of the litigation are compared with the "financial benefits that the litigation yields or reasonably could have been expected to yield." (*Conservatorship of Whitley, supra*, 50 Cal.4th at p. 1215.)

The high court illustrated how the costs and benefits should be determined and weighed by quoting extensively from *Los Angeles Police Protective League v. City of Los Angeles, supra,* 188 Cal.App.3d at pages 9 through 10. (*Conservatorship of Whitley, supra,* 50 Cal.4th at pp. 1215–1216.)

█ The benefits side of the equation contains two components, which are multiplied by one another. First, the court must determine the monetary value of the benefits obtained by the successful party. This determination is based on " 'the gains actually attained' " and not on the gains sought.[6] (*Conservatorship of Whitley, supra,* 50 Cal.4th at p. 1215.) Second, the court must estimate " 'the probability of success at the time the vital litigation decisions were made . . . .' " (*Ibid.*) The monetary value of the benefits obtained is discounted by the estimated probability of success to produce the estimated value of the case at the time the vital litigation decisions were being made. This discounted monetary value represents the benefit in the cost-benefit comparison. (*Ibid.*)

The costs side of the cost-benefit analysis is based on the actual costs of the litigation, which include attorney fees, deposition costs, expert witness fees, and other expenses required to bring the case to fruition. (*Conservatorship of Whitley, supra,* 50 Cal.4th at pp. 1215–1216.)

The final step in the cost-benefit analysis is to compare the estimated value of the case to the actual cost and make a value judgment whether it is desirable to encourage litigation of that sort by providing a bounty. (*Conservatorship of Whitley, supra,* 50 Cal.4th at p. 1216.) A bounty (i.e., an award of fees) is " 'appropriate except where the expected value of the litigant's own monetary reward exceeds by a substantial margin the actual litigation costs.' [Citation.]" (*Ibid.*)

In this case, Robinson's moving papers addressed the actual cost side of the analysis by asserting he incurred and paid approximately $232,000 in attorney fees. On the benefit side of the analysis, Robinson obtained (1) a writ requiring City to provide him with notice, a statement of reasons, and an opportunity for an administrative appeal, (2) breach of contract damages of $30,878.46, and (3) prejudgment interest on those damages of $19,261.58.

We will not attempt to apply the cost-benefit analysis here. Instead, we will remand to the trial court for it to reach a determination, in light of

---

[6] We recognize that the use of actual gains attained in a formula designed to estimate the value of the case *at the time vital litigation decisions were made* might be regarded as incongruous because the litigant's own estimate of the case's value at that point would be based on the gain expected (i.e., estimated, predicted or forecasted) by the litigant, not the gain actually achieved later.

*Conservatorship of Whitley,* regarding the "financial burden of private enforcement" criterion contained in section 1021.5. (See *Aguilar v. Johnson, supra,* 202 Cal.App.3d at p. 253 [remanded to trial court for a determination of financial burden criterion]; *Mounger v. Gates, supra,* 193 Cal.App.3d at p. 1259 [same].)

II. *Motion to Tax Costs and the Section 998 Offer to Compromise**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The May 20, 2010, order denying Robinson's motion for attorney fees is reversed and the matter is remanded for further proceedings in accordance with this opinion.

The May 20, 2010, order granting the motion to tax costs is vacated pending the outcome of the further proceedings on Robinson's motion for attorney fees, after which time the trial court is directed to enter a new order regarding that motion.

Robinson shall recover his costs on appeal.

Gomes, Acting P. J., and Detjen, J., concurred.

---

*See footnote, *ante,* page 382.