Filed 2/8/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ERIC P. EARLY et al., | C089943 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2018-80002902-CU-WM-GDS) |
| v. | |
| XAVIER BECERRA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Richard K. Sueyoshi, Judge. Affirmed.

Early Sullivan Wright Gizer & McRae, Peter D. Scott; Steve Cooley and Associates, Steve Cooley, Brentford Ferreira; Parris Law Firm and R. Rex Parris for Plaintiffs and Appellants.

Kaufman Legal Group, Stephen J. Kaufman, George M. Yin, Gary S. Winuk; Downey Brand and Jay-Allen Eisen for Defendants and Respondents Xavier Becerra and Becerra for Attorney General 2018.

Steven J. Reyes and Lisa M. Alarcon for Defendant and Respondent Dr. Shirley N. Weber.

1

Xavier Becerra and his election committee (collectively, Becerra) successfully defended a petition for writ of mandate brought by Eric P. Early and his election committee (collectively, Early) seeking to remove Becerra as a candidate for Attorney General on the November 2018 ballot. We affirmed the decision of the trial court denying the petition. (*Early v. Becerra* (2020) 47 Cal.App.5th 325, 329.) Early alleged that Becerra was ineligible for the office of Attorney General because his state bar status was "inactive" during the five years preceding the election and therefore he was not "admitted to practice" in the state as required for that period under Government Code section 12503.[1] We held that the phrase "admitted to practice" in the statute "refers to the event of admission to the bar and the status of being admitted, and does not require engagement in the 'actual' or 'active' practice of law." (*Early v. Becerra, supra*, 47 Cal.App.5th at p. 329.)[2]

Becerra brought a motion for attorney fees under Code of Civil Procedure section 1021.5, which the trial court granted awarding Becerra $69,718 in attorney fees.[3] We now affirm the trial court's award of attorney fees under section 1021.5. Becerra's

---

[1] Government Code section 12503 provides: "No person shall be eligible to the office of Attorney General unless he shall have been admitted to practice before the Supreme Court of the state for a period of at least five years immediately preceding his election or appointment to such office."

[2] Early requested judicial notice of our opinion in *Early v. Becerra*, as well as a resolution of the California Citizens Compensation Commission stating that the annual salary of the Attorney General shall be $182,189 effective December 2, 2019. The request is unopposed. We deferred ruling on Early's request and now grant it. In his reply brief, Early notes that we determined in *Early v. Becerra* that the parties should bear their own costs on appeal under California Rules of Court, rule 8.278(a)(5). (*Early v. Becerra, supra*, 47 Cal.App.5th at p. 340.) However, a cost award in the Court of Appeal is irrelevant to a motion for attorney fees in the trial court. (*Stratton v. Beck* (2018) 30 Cal.App.5th 901, 911; cf. Cal. Rules of Court, rule 8.278(d)(2).)

[3] Undesignated statutory references are to the Code of Civil Procedure.

successful defense of the petition enforced an important public right and conferred a significant benefit on the general public as required by subdivision (a) of section 1021.5. This litigation resulted in a published opinion stating for the first time that Government Code section 12503 did not require active or actual practice of law, thereby expanding the pool of eligible candidates for Attorney General, for example, to include members of the state bar who had voluntarily taken inactive status while serving in other public office.

Further, the trial court did not abuse its discretion in determining under subdivision (b) of section 1021.5 that the financial burden Becerra incurred in defending Early's suit outweighed any pecuniary benefit in the form of the salary paid to the Attorney General or otherwise. A successful defense meant only that Becerra's name remained on the ballot and did not ensure that he would gain the position and its associated pecuniary benefits.[4]

Lastly, we find no abuse of discretion in the amount of fees the trial court awarded for the work of Becerra's attorneys on the fees motion. It is axiomatic that an experienced trial judge is the best judge of the value of legal services rendered in the trial court.

The judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

In *Early v. Becerra*, we detailed the facts and events leading to the trial court's ruling that the language of Government Code section 12503 did not support Early's petition for writ of mandate to disqualify Becerra from the November 2018 election. We

---

[4] Respondent California Secretary of State took no position in *Early v. Becerra* on the interpretation of Government Code section 12503 and the eligibility of Becerra for Attorney General under that statute. (*Early v. Becerra, supra*, 47 Cal.App.5th at p. 328, fn. 1.) Likewise, the Secretary of State takes no position on Becerra's motion for attorney fees.

refer the reader to our prior decision on that subject. (See *Early v. Becerra, supra*, 47 Cal.App.5th at pp. 329-331.)

The judgment entered in favor of Early on July 31, 2018, stated that Early's application for attorney fees under section 1021.5 would be made by separate motion.[5]

On October 1, 2018, Becerra brought a motion for attorney fees under section 1021.5  Becerra noted that Early had sought an award of attorney fees under the statute and stated in petitions to this court and the California Supreme Court that this case presented issues of great public importance.  Becerra argued that his successful defense of Early's petition for writ of mandate enforced an important right affecting the public interest and conferred a significant benefit on the general public, in that he had:  (1) protected the right of the electorate to choose the candidate they deemed most suitable for elected office; (2) obtained a ruling on the proper construction of Government Code section 12503; and (3) furthered and preserved the voters' ability to choose candidates for Attorney General from a broad pool of the legal community.

Becerra maintained he had no alternative but to incur the legal expense of opposing Early's petition because no public entity or official could lawfully expend public resources on behalf of a political candidate.  Becerra conceded that he had a

---

[5]  Section 1021.5 provides in pertinent part:  "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

Subdivision (c) has no application here since there was no monetary recovery.  (*Baggett v. Gates* (1982) 32 Cal.3d 128, 142, fn. 17.)  In addition, Early has not challenged the need for private enforcement, one of the criteria of subdivision (b).  (*Ibid.*)

personal stake in preserving his candidacy for Attorney General but contended the financial burden of the litigation exceeded his personal interest.

Finally, Becerra argued that the fees incurred were reasonable given the qualifications of his counsel, the reasonableness of their hourly rates, the interests at stake, the time and skill required in litigation involving interpretation of Government Code section 12503 as a matter of first impression, and his attorneys' success. Becerra also sought attorney fees incurred in bringing the motion for attorney fees.

On March 22, 2019, Early filed an opposition to the motion. Early contended that Becerra did not defend the litigation to give voters greater choice in the election but to reap the pecuniary benefits of the Attorney General's office. Early argued that Becerra's motion should be denied because he failed to conduct the required cost/benefit analysis. Early maintained that such analysis would demonstrate that Becerra's financial stake greatly exceeded the attorney fees he claimed to have incurred because he stood to gain more than $2 million, consisting of the discounted value of the Attorney General's salary and benefits for a four-year term and, after leaving office, an estimated $200,000 annual salary in the private sector for 10 years due to his status as a former Attorney General. Early also suggested that Becerra's attorneys never actually billed their fees but worked pro bono, and, if the fees were charged, Becerra's campaign, not Becerra, paid them. Finally, Early contended (1) any fees awarded could not include amounts spent on writ proceedings in this court and the California Supreme Court, and (2) the fees sought for preparing the fees motion were exorbitant.

In reply, Becerra argued, inter alia, that attorney fees had routinely been awarded in election cases and the issue of eligibility under Government Code section 12503 affected more than just Becerra and had been raised in a prior suit involving then-Attorney General Brown. Becerra contended that Early's calculation of the financial gain Becerra stood to obtain were he elected to the office was no more than speculation.

5

Becerra disputed Early's position that attorney fees for appellate work could not be awarded by the trial court.

On May 1, 2019, the trial court issued a ruling on Becerra's motion for attorney fees. The court found that Becerra's successful defense vindicated an important right in the public interest and conferred a significant benefit on the general public as required by section 1021.5 for an award of attorney fees. The court pointed out that Early referred in his petition for writ of mandate and supporting memorandum to the need to prevent a great waste of taxpayer funds and confusion of California voters occasioned by having an ineligible candidate (Becerra) on the ballot, thereby promoting the fairness and legitimacy of the election. The court reasoned that Early's failure to prevail did not make these issues any less critical, in that the decision of the court and Becerra's successful defense ensured there would be no waste of taxpayer funds or voter confusion and promote the fairness and legitimacy of the election by ensuring that Becerra was an eligible candidate. The court analyzed and distinguished Early's case authority cited for the proposition that the right of voters to the candidate of their choice is not an important right affecting the public interest and that attorney fees incurred in a candidate's pursuit of elective office do not " 'transcend' " the candidate's personal stake in the election.

The trial court then turned to the requirement of subdivision (b) of section 1021.5 that the necessity and financial burden of enforcement must support the appropriateness of the award. The court analyzed case authority and found there was no basis to conclude that Becerra's defense was motivated by pecuniary interests and non-pecuniary interests were irrelevant. The court found that "Becerra neither expected nor could expect any *direct* pecuniary benefit from this litigation," and there was no evidence before the court to support Early's assertions regarding Becerra's income over the next decade. Even if Early had submitted such evidence, the court said Becerra's future private sector income was speculative. In addition, a successful defense would result only in Becerra remaining on the ballot but not in his receiving the salary and benefits of the Attorney General

position, since California voters had yet to elect him to that office. The court observed that another defect in Early's argument was the failure to offset the salary Becerra would receive from other employment if his defense had been unsuccessful. The court also found, that even if Becerra's pecuniary benefits were quantifiable and exceeded the cost of litigation, the benefits for the general public were so very high so as to make an award appropriate.

The trial court rejected Early's argument that fees incurred in appellate proceedings were not recoverable as based on case authority regarding writs that originated in an appellate court. The court also noted authority that an award of costs in the appellate court has no bearing on a party's ability to seek attorney fees. However, the court agreed with Early that the amount Becerra sought for time spent on the fees motion was excessive and reduced it by half from $21,189 to $10,594.50. The court refused Early's request to deny such fees in their entirety, observing that the motion "raised interesting and arguably novel issues concerning the application of section 1021.5 under the facts of this case."

On May 23, 2019, the trial court issued an amended judgment awarding Becerra fees under section 1021.5 in the total amount of $69,718.

## DISCUSSION

*Section 1021.5*

" 'As a general rule, parties in litigation pay their own attorney's fees. [Citation.] Section 1021.5 is an exception to that rule. [Citation.] Derived from the judicially crafted 'private attorney general doctrine' [citation], section 1021.5 is aimed at encouraging litigants to pursue meritorious public interest litigation vindicating important rights and benefitting a broad swath of citizens, and it achieves this aim by compensating successful litigants with an award of attorney's fees [citations].' [Citation.] The intent of section 1021.5 fees is not 'to punish those who violate the law but rather to ensure that those who have acted to protect public interest will not be forced to shoulder the cost of

litigation.' [Citation.]" (*Friends of Spring Street v. Nevada City* (2019) 33 Cal.App.5th 1092, 1107.)

" '[E]ligibility for section 1021.5 attorney fees is established when "(1) [the moving party's] action 'has resulted in the enforcement of an important right affecting the public interest,' (2) 'a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons' and (3) 'the necessity and financial burden of private enforcement are such as to make the award appropriate.' " ' [Citation.]" (*Sandlin v. McLaughlin* (2020) 50 Cal.App.5th 805, 828 (*Sandlin*).)

When the statutory criteria have been met, fees must be awarded "unless special circumstances render such an award unjust. [Citation.]" (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 391 (*Robinson*).)

"The statute ' "draws no distinctions between plaintiffs and defendants." ' [Citation.] Thus, a real party in interest who successfully defeats a petition for writ of mandate may recover [his or] her attorney fees under section 1021.5 if [he or] she meets all three elements of the statute. [Citation.]" (*Sandlin, supra*, 50 Cal.App.5th at p. 828.)

"The determination whether a party has met the requirement for an award of fees and the reasonable amount of such an award are matters best decided by the trial court in the first instance. [Citation.] That court ' " 'must realistically assess the litigation and determine from a practical perspective whether the statutory criteria have been met.' " ' [Citation.] We will uphold the trial court's decision to award attorney fees under section 1021.5 unless the trial court abused its discretion. [Citation.] In making this determination we review the entire record, noting the trial court's stated reasons for awarding fees and whether it applied the proper standards of law in reaching its decision. [Citation.]" (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 980.) We will reverse the trial court's determination only if the resulting injury " ' " 'is sufficiently grave to amount to a manifest miscarriage

of justice,' " ' and ' "no reasonable basis for the action is shown." ' [Citation.]" (*Weissman v. Los Angeles County Employees Retirement Assn.* (1989) 211 Cal.App.3d 40, 46-47.)

" ' " 'However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " ' [Citation.]" (*Sandlin, supra*, 50 Cal.App.5th at pp. 828-829; *La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1156 ["To the extent we construe and define the statutory requirements for an award of attorney's fees, our review is de novo; to the extent we assess whether those requirements were properly applied, our review is for an abuse of discretion"].)

In addition, the appellate court does not have to defer totally to the trial court when the litigation results in a published appellate opinion. "In that case . . . the appellate court is often well situated to decide (1) whether the legal action has a significant impact on the law because it enforces an important legal right, and (2) whether that decision confers a significant benefit on a substantial segment of the citizenry." (*Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1258-1259; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 8-10 (*Los Angeles Police Protective League*).) Here, the trial court did not know that the litigation would result in a published opinion interpreting the meaning of "admitted to practice" in Government Code section 12503. (*Robinson, supra*, 202 Cal.App.4th at pp. 397-398.) Thus, the lower court performed its assessment of the case without access to all the pertinent circumstances available now. (*Ibid.*) The lower court could not consider how the application of the "important right" and "significant impact" criteria of section 1021.5 are affected by the change in circumstances caused by our published decision. (*Robinson, supra*, 202 Cal.App.4th at pp. 398-399.) On the other hand, we are well suited to do so. (*Ibid.*; see also *Los Angeles Police Protective League, supra*, 188 Cal.App.3d at p. 9 ["How many people will receive

9

what kind of benefit, and how much, as a result of a given legal action is usually more of a value judgment than an issue of fact. And most often it is a value judgment about legal effects and the like which appellate courts are well situated to make"].)

*Enforcement of an Important Right of Significant Benefit to the General Public*

Early claims that the trial court erred in finding that Becerra's suit met the first two criteria of section 1021.5, i.e., (1) "enforcement of an important public right affecting the public interest," (2) resulting in a "significant benefit . . . conferred on the general public . . . ." (§ 1021.5, subd. (a).) Early argues the trial court ignored *Bradley v. Perrodin* (2003) 106 Cal.App.4th 1153 (*Bradley*), and *Willard v. Kelley* (2015) 238 Cal.App.4th 1049 (*Willard*), "both of which confirm that, in election contest litigation, the candidates' personal stake in the litigation predominates over any incidental public benefit purportedly achieved by the litigation."

The trial court, however, discussed both cases, neither of which presented issues of the complexity or magnitude of the issues presented here. In *Bradley*, the court determined that under the Elections Code a city could use the same randomized alphabet for both the primary election and the subsequent runoff election. The court rejected the candidate's assertion that "his successful appeal has resulted in the enforcement of an important public right affecting the public interest and has conferred a significant benefit on the public, namely 'the fundamental right of self-determination for the citizens of Compton.' " (*Bradley, supra*, 106 Cal.App.4th at p. 1165.) While it could be said that every election contest, by its very nature, touches upon "the fundamental right of self-determination," not every election contest confers "a significant benefit to the electorate." The ballot arrangement may have affected the electoral fate of the candidates involved,

10

but it was of little consequence to the rights of voters, whose electoral choices were not impacted.[6]

In *Willard*, a candidate for office challenged his opponent's ballot designation as misleading. He lost and the opponent, who prevailed, sought attorney fees. In denying the fee request the court said his "victory did not confer a *significant* benefit to the electorate." (*Willard, supra*, 238 Cal.App.4th at p. 1057.) "[T]he litigation regarding the petition more closely resembles the 'mundane squabbles over the factual accuracy of a statement peculiar to one candidate's personal history . . . .' [Citation.]" (*Ibid.*) As in *Bradley*, the benefit of the court's decision was largely confined to the prevailing candidate who was permitted to retain what he believed was a favorable job description on the ballot.

We reject the notion that attorney fees can never be recovered in election litigation—section 1021.5 sets forth no such limitation—but we agree with the principle that the award must "transcend the candidate's 'palpable personal stake in the . . . election." *(Bradley, supra*, 106 Cal.App.4th at p. 1165.) The award in this case qualifies.

This case resulted in (1) our published opinion (2) interpreting a statute setting forth the requirements for the office of Attorney General. In *Early v. Becerra*, Early argued that Becerra should be removed from the ballot as ineligible for the office of

---

[6] In *Bradley*, the court interpreted Election Code sections 13112 and 13113 not to require in a runoff election a new randomized alphabet drawing for the order of the candidates' names arranged on the ballot. (*Bradley, supra*, 106 Cal.App.4th at pp. 1163-1164.) However, the party seeking attorney fees under section 1021.5 did not base the request on this aspect of the decision and thus, unlike in *Hammond v. Agran* (2002) 99 Cal.App.4th 115 (*Hammond*), disapproved on another ground in *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1226, footnote 4 (*Whitley*), the court did not reach it in denying attorney fees. (*Bradley, supra*, 106 Cal.App.4th at p. 1165.) " '[C]ases are not authority for propositions not considered.' " (*City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1292, quoting *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 374.)

Attorney General under Government Code section 12503 because he was voluntarily "inactive" during the preceding five years. We held: "Both active and inactive attorneys are members of the State Bar. [Citation.] The phrase 'admitted to practice' [in Government Code section 12503] refers to the event of admission to the bar and the status of being admitted, and does not require engagement in the 'actual' or 'active' practice of law." (*Early v. Becerra, supra*, 47 Cal.App.5th at p. 329.) Although the same challenge had been brought against then-Attorney General Brown in 2007, no appellate court had previously interpreted this language in the statute in a published decision. (*Id.* at p. 329, fn. 3.)

In *Los Angeles Police Protective League*, the court observed that an appellate court's decision to publish an opinion may not be conclusive but it is strong evidence that the underlying action " 'vindicated an important right.' " (*Los Angeles Police Protective League, supra*, 188 Cal.App.3d at p. 12.) The court said that "where as here the reason for publication of the opinion is to announce a rule not found in previously published opinions the decision clearly vindicates a right and one deemed important enough to warrant publication." (*Ibid.*)

Moreover, this case involves election law. Government Code section 12503 sets forth the qualifications for the position of Attorney General, an elected office. (See Cal. Const., art. V, § 11.) In *Adoption of Joshua S.* (2008) 42 Cal.4th 945, the California Supreme Court said, "election law litigation inherently implicates public rights." (*Joshua S., supra*, 42 Cal.4th at p. 957, fn. 4; *Sandlin, supra*, 50 Cal.App.5th at p. 830.)

Further, both *Bradley* and *Willard* relied on *Hammond, supra* 99 Cal.App.4th 115. (See *Bradley, supra*, 106 Cal.App.4th at p. 1165 [citing only *Hammond* in its analysis]; *Willard, supra*, 238 Cal.App.4th at pp. 1056-1058.) In *Hammond*, a city council candidate successfully defended a challenge to his statement of opposition to a commercial airport in the voters' pamphlet as misleading and beyond the scope of the term "qualifications" as used in Elections Code section 13307. (*Hammond, supra*,

12

99 Cal.App.4th at p. 119.)  The trial court concluded the word "qualifications" did not include statements about a candidate's views on public issues.  (*Ibid.*)  The candidate's appeal resulted in a published decision that the word "qualifications" did include such views.  (*Id.* at pp. 119-120.)

The candidate moved for attorney fees under section 1021.5, which the trial court denied in its entirety.  (*Hammond, supra*, 99 Cal.App.4th at p. 120.)  On appeal from that decision, the court concluded that fees for trial work connected to the candidate's "quest for elective office" were not recoverable because of his "palpable personal stake in the statement and the election."  (*Id.* at p. 128.)  The court also denied other components of the candidate's fee request, including attorney work regarding the factual question whether the candidate's statement was misleading.  (*Id.* at pp. 128-132.)  The sole component of the attorney fee request that the *Hammond* court held the trial judge was wrong to deny was for fees for appellate work on the issue of whether Elections Code section 13307 allowed statements of a candidate's viewpoints.  (*Hammond, supra*, 99 Cal.App.4th at p. 132 ["That issue didn't concern itself with some factual point peculiar to one candidate, but to a matter that affects all voters and candidates"].)  *Hammond* held that the candidate "*should* be compensated for his reasonable fees spent on the scope of the statute issue.  That time was actually incurred vindicating a public right."  (*Id.* at p. 130, fn. 6.)

In *Hammond*, the court held that litigation resulting in a published appellate decision resolving the question whether a candidate "has the right under [Election Code] section 13307 to express his or her views in a ballot pamphlet candidate's statement . . . transcended his personal stake in his own particular candidate's statement, and will necessarily inure to every voter who reads a ballot pamphlet in a local election wondering what policies a candidate intends to pursue in office."  (*Hammond, supra*, 99 Cal.App.4th at p. 132; *Sandlin, supra*, 50 Cal.App.5th at p. 830.)  In this instance, Becerra's successful defense resulted in a published decision establishing for all candidates for the

office of Attorney General, as well as California voters, that eligibility for the office did not exclude the " 'vast reservoir' " of potential legal talent serving in another capacity (like Becerra, for example, as a member of the United States House of Representatives). (*Early v. Becerra, supra*, 47 Cal.App.5th at p. 336.)

However, unlike *Hammond*, there were no components of attorney's trial work that did not concern the interpretation of Government Code section 12503 (other than their work on the fees motion which we address separately). The facts regarding Becerra's voluntary "inactive" status were undisputed. The only issue was the meaning and application of the "admitted to practice" language in the statute. Therefore, all the fees requested for trial work resulted in the trial court's decision leading to our published opinion that the "admitted to practice" language in Government Code section 12503 includes a member of the state bar who voluntarily takes "inactive" status.

Taking into account all pertinent circumstances, including our published decision in *Early v. Becerra*, we conclude that Becerra's motion for attorney fees met the criteria of section 1021.5, subdivision (a), that the litigation vindicate an "important right affecting the public interest" of "significant benefit" to the general public.

*Financial Burden*

In considering whether the financial burden of private enforcement warrants awarding attorney fees under section 1021.5, subdivision (b), the focus is " 'not only on the costs of the litigation but also any offsetting financial benefits that litigation yields or reasonably could have been expected to yield.' " (*Boatworks, LLC v. City of Alameda* (2019) 35 Cal.App.5th 290, 309 (*Boatworks*); *Whitley, supra*, 50 Cal.4th at p. 1215.)

" ' "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]" ' [Citation.] 'This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit.' [Citation.]"

14

(*Whitley, supra*, 50 Cal.4th at p. 1215.) "However, '[w]hen each of the [section 1021.5] criteria is met, the fact the primary effect of the action was to vindicate a plaintiff's personal economic interests does not foreclose an award of attorney fees.' " (*People v. Investco Management & Development LLC* (2018) 22 Cal.App.5th 443, 468 (*Investco*), quoting *Robinson, supra*, 202 Cal.App.4th at p. 400.)

"To weigh the costs and benefits, '[t]he trial court must first fix—or at least estimate—the monetary value of the benefits obtained by the successful litigants themselves. . . . Once the court is able to put some kind of number on the gains actually attained it must discount these total benefits by some estimate of the probability of success at the time the vital litigation decisions were made which eventually produced the successful outcome.' [Citation.] After approximating an estimated value of the case, the court then determines the cost of the litigation. [Citation.] Finally, the court 'place[s] the estimated value of the case beside the actual cost and make[s] the value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case . . . . [A] bounty will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' " (*Boatworks, supra*, 35 Cal.App.5th at p. 309, quoting *Los Angeles Police Protective League, supra*, 188 Cal.App.3d at pp. 9-10; accord *Whitley, supra*, 50 Cal.4th at pp. 1215-1216.)

The trial court did not engage in this analysis but rather found that Becerra "neither expected nor could expect any *direct* pecuniary benefit from this litigation." The court also observed that Early made assertions about the value of the Attorney General's salary and benefits and future income in the private sector but provided no supporting evidence. Early has now made an unopposed request for judicial notice, which we granted, that the Attorney General's annual salary is $182,189, arguing that "Becerra stood to receive for the next four years after his election as California Attorney General (a total of $728,756)."

15

However, the trial court said that if proper evidence had been supplied, Early's argument "would still be based upon improper speculation." We agree. As the court explained, Becerra's "potential success in this case would not result in Becerra receiving any salary or benefits for the position of Attorney General. Rather, a successful defense would result only in Becerra remaining on the ballot for the 2018 general election." Thus, the financial benefit Becerra might receive was " 'at least once removed from the results of the litigation.' " (*Boatworks, supra*, 35 Cal.App.5th at p. 310, quoting *Heron Bay Homeowners Assn. v. City of San Leandro* (2018) 19 Cal.App.5th 376, 395.) " 'Where personal benefits are a step removed from the results of the litigation, the potential benefit is indirect and speculative, and thus, a trial court does not abuse its discretion in concluding that the financial burden criterion is satisfied for purposes of [Code of Civil Procedure] section 1021.5.' " (*Boatworks, supra*, 35 Cal.App.5th at p. 310, quoting *Investco, supra*, 22 Cal.App.5th at p. 470; see also *Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 740.)

Moreover, the trial court cited *Los Angeles Police Protective League* regarding the interrelation of section 1021.5 factors. "Where the benefits achieved for others are very high it will be more important to encourage litigation which achieves those results. Accordingly, it will be more important to offer the bounty of a court-awarded fee than where the public benefits are less significant. Thus, the courts should be willing to authorize fees on a lesser showing of need than they might where the public benefits are less dramatic. This means the court sometimes should award fees even in situations where the litigant's own expected benefits exceed its actual costs by a substantial margin." (*Los Angeles Police Protective League, supra*, 188 Cal.App.3d at p. 10)

Here, the benefits achieved for the electorate are "very high." This case resulted in a published decision that put to rest a challenge to the eligibility of a candidate for Attorney General under Government Code section 12503 twice mounted against

16

candidates for this office whose only claimed disqualifying factor was that they were "admitted to practice" but "inactive" while serving in other public office.

*Fees Incurred in Fee Motion*

Early contends that while "[t]he trial court found that the time spent by Becerra on his Fees Motion is 'excessive and in part [] unreasonable,' " it only "adjusted the fee downward by one half," and the "entirety of Becerra's request for fees concerning preparation of his fees motion should have been stricken." We disagree.

In *Serrano v. Unruh* (1982) 32 Cal.3d 621, the California Supreme Court held that the private attorney general doctrine "will often be frustrated, sometimes nullified, if awards are diluted or dissipated by lengthy, uncompensated proceedings to fix or defend a rightful fee claim. The rule . . . is that, absent facts rendering the award unjust, parties who qualify for a fee should recover for all hours reasonably spent, including those on fee-related matters." (*Id.* at pp. 632-633, fn. omitted; see also *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 580.) The court in *Serrano* observed that, "[i]n cases where entitlement is vigorously contested . . . the hours demanded could dwarf those spent to establish the claim on the merits." (*Serrano*, at pp. 634-635, fn. omitted.)

Early complains that Becerra's attorneys spent 39 hours on the fee motion versus 120 hours on the merits, including appellate work. However, Early vigorously opposed the fees motion, which, the trial court said, "raised interesting and arguably novel issues concerning the application of section 1021.5 under the facts of this case," and accordingly denied Early's request to entirely deny Becerra fees for the fees motion. The validity of the court's comment is borne out by the transcript of the hearing on Becerra's fees motion which runs to 28 pages and the court's ruling which is 13 single-spaced pages. By contrast, the transcript of the hearing on the merits of Early's petition for writ of mandate is 25 pages and the court's ruling is just six pages.

17

Moreover, "[t]he 'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " (*Serrano v. Priest* (1977) 20 Cal.3d 25, 49.) "The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134.) Early has not convinced us that the trial judge here was clearly wrong in reducing the fees incurred by Becerra on his fees motion from $21,189 to $10,594.50, nor that this portion of the fees award was so large or small as to suggest passion and prejudice influenced the award.

## DISPOSITION

The amended judgment awarding Becerra the amount of $69,718 under Code of Civil Procedure section 1021.5 is affirmed. Becerra shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                      _____/s/_____

                                      RAYE, P. J.


We concur:


_____/s/_____

HOCH, J.


_____/s/_____

RENNER, J.