Filed 8/2/24  Westlands Water District v. All Persons Interested etc. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| WESTLANDS WATER DISTRICT, Plaintiff and Appellant, v. ALL PERSONS INTERESTED etc. et al., Defendants and Respondents. | F085374 (Super. Ct. No. 19CECG03887) **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  D. Tyler Tharpe, Judge.

Stradling Yocca Carlson & Rauth, Allison E. Burns and Douglas S. Brown for Plaintiff and Appellant.

Law Offices of Stephan C. Volker, Stephan C. Volker, Stephanie L. Clarke and Jamey M.B. Volker for Defendants and Respondents North Coast Rivers Alliance, Winnemem Wintu Tribe, California Sportfishing Protection Alliance, Institute For Fisheries Resources, Pacific Coast Federation of Fishermen's Associations, and San Francisco Crab Boat Owners Association.

-ooOoo-

Code of Civil Procedure section 1021.5 (section 1021.5) authorizes an award of attorney fees to a successful party in any action resulting in the "enforcement of an important right affecting the public interest" if, inter alia, a "significant benefit" has been conferred upon society or a large class of people. The statute codifies the private attorney general doctrine and "the courts' 'traditional equitable discretion' concerning attorney fees …, and within the statutory parameters courts retain considerable discretion." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251.) "In deciding whether to award fees, the court 'must realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an important right so as to justify an attorney fee award under a private attorney general theory.'" (*Ibid*.)

This appeal challenges a trial court's decision to award fees pursuant to section 1021.5 in a validation action. Appellant Westlands Water District (Westlands) had an existing contract with the federal government that was about to expire and both sides intended to enter into a new agreement. Westlands' complaint sought a judicial decree regarding the validity of the anticipated contract. However, the contract presented to the trial court for validation was missing key terms regarding Westlands' financial obligations under the agreement.

The trial court said it likely would have validated the contract, despite the omissions, but for the opposition of multiple parties, including respondents herein. Respondents pointed out the absence of material terms in the draft agreement and lack of public disclosure of the missing information. The trial court ultimately refused to validate the contract. Westlands' complaint was ordered dismissed, and respondents were later awarded over $100,000 in attorney fees. In its fees ruling, the trial court noted the importance of "transparency and accountability in public contracts."

Westlands argues there were no successful parties in the validation action. It also claims the trial court erred by finding respondents helped enforce "an important right" and conferred a "significant benefit" upon the general public. (§ 1021.5.) Westlands'

2.

strongest argument focuses on the significant benefit requirement. The trial court did not rule the contract was unlawful; it declined to affirmatively validate it due to Westlands' failure to meet the applicable burdens. There was no evidence to suggest the dismissal of Westlands' validation action had any impact on Westlands' contractual relationship with the federal government. The contracting parties entered into a revised agreement while the action was still pending, and they had been performing under the new contract for over two years by the time respondents' motion for attorney fees was granted.

On the other hand, the dismissal of Westlands' complaint was affirmed by this court in a published opinion, *Westlands Water Dist. v. All Persons Interested* (2023) 95 Cal.App.5th 98. The case presented a novel issue, arising from an unusual set of facts, regarding the propriety of validating an incomplete contract when the missing terms are material to the contractual subject matter of local government debt and expenditure. "The publication of an opinion suggests that the case involved a matter of public importance." (*Doe v. Westmont College* (2021) 60 Cal.App.5th 753, 764.) Publication may also confer a significant benefit by "clarifying existing law and requiring it to be followed." (*McCormick v. Public Employees' Retirement System* (2023) 90 Cal.App.5th 996, 1010.) In deference to the trial court's considerable discretion, we affirm its decision to award attorney fees under section 1021.5.

## FACTUAL AND PROCEDURAL BACKGROUND

This court is familiar with the parties and the underlying litigation from prior appeals. A comprehensive background is provided in *Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th at pages 104 through 124, which we incorporate by reference. Due to the nature of the issues in this appeal, much of the information is repeated in the first part of this summary.

### *Overview and Prior Merits Determinations*

Westlands is a public agency formed for the purpose of obtaining federal reclamation water from the Central Valley Project (CVP) and distributing the water to its

3.

constituents. In 1963, Westlands and the United States Bureau of Reclamation (Bureau) entered into a 40-year water service contract. When the original contract expired, Westlands and the Bureau executed a series of interim renewal contracts to maintain the status quo until they could meet the requirements of the Central Valley Project Improvement Act (Pub.L. No. 102-575 (Oct. 30, 1992) 106 Stat. 4706), which had imposed restrictions on long-term renewals of water service contracts.

In late 2016, Congress enacted the Water Infrastructure Improvements for the Nation Act (Pub.L. No. 114-322 (Dec. 16, 2016) 130 Stat. 1628) (WIIN Act). This legislation authorized a limited-time opportunity for water contractors like Westlands to convert their existing water service contracts into a type of agreement known as a "repayment contract." (WIIN Act, § 4011.) Converted contracts had to be executed by December 2021. (*Id*., § 4013.) Such conversions were also contingent upon the contractor's repayment of all outstanding project construction cost obligations in a "lump sum," or "in approximately equal installments, no later than 3 years after the effective date of the repayment contract …." (*Id*., § 4011(a)(2)(A).)

By 2019, Westlands and the Bureau had agreed in principle to convert their sixth interim renewal contract to a repayment contract. On October 15, 2019, Westlands' board of directors (Board) met and formally authorized the execution of a converted contract "in substantially the form presented to [it]," which at the time was an incomplete draft missing four exhibits referenced in the body of the document. On October 25, 2019, Westlands filed its validation complaint in the Fresno Superior Court pursuant to Code of Civil Procedure section 860 et seq., Government Code section 53510 et seq., and Water Code section 35855.

We pause here to note that public agencies are not required to seek judicial validation of their contracts and related financial decisions. "Instead, an agency may choose to do nothing and allow the agency decision or act to be validated by operation of law based on the passage of time." (*Davis v. Fresno Unified School Dist*. (2020) 57

4.

Cal.App.5th 911, 927.)  In other words, "an agency may indirectly but effectively 'validate' its action *by doing nothing to validate it*[.]"  (*City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 341.)  "[U]nless an 'interested person' brings an action of his own under [Code of Civil Procedure] section 863 within [a] 60-day period, the agency's action will become immune from attack whether it is legally valid or not."  (*Ibid.*)

The reason Westlands filed a validation action was because of a clause in its draft agreement with the Bureau.  The provision stated:  "Promptly after the execution of this amended Contract, the Contractor [Westlands] will provide to the Contracting Officer [the Bureau] a certified copy of a final decree of a court of competent jurisdiction in the State of California, confirming the proceedings on the part of the Contractor for the authorization of the execution of this amended Contract.  This amended Contract shall not be binding on the United States until the Contractor secures a final decree."

Westlands' validation complaint included the following prayer for relief:

> "That judgment be entered determining that: … the Converted Contract, [i.e., the draft attached as an exhibit] and each and every provision of said Converted Contract, is valid under applicable California law; … all of the proceedings of [Westlands] and its Board of Directors leading up to and including the making and approval of said Converted Contract were in all respects legal and valid; … [and] that said Converted Contract is in all respects valid under applicable California law and binding upon the respective parties thereto …."

Four groups of defendants filed answers to the validation complaint:  (1) respondents; (2) the Counties of San Joaquin and Trinity (Counties); (3) a group led by the California Water Impact Network (collectively CWIN); and (4) the Central Delta Water Agency and the South Delta Water Agency (collectively, CDWA).  All defendants characterized the lawsuit as premature.  They claimed the Bureau had not yet completed its "review and decision-making" on the matter and had "extended an initial 60-day comment period on Westlands' 'draft repayment contract' until January 8, 2020."

5.

Respondents alleged the actions taken by Westlands' Board violated state and federal environmental laws. Respondents further alleged Westlands had violated the Ralph M. Brown Act (Gov. Code, § 54950 et seq.) (Brown Act) because "[n]one of the Exhibits to the Contract were provided to the public, preventing informed public review and comment." The Counties argued the missing exhibits rendered the working draft "materially incomplete." Among other reasons, the amount of Westlands' repayment obligation was purported to be set forth in "Exhibit D" and was not otherwise stated in the contract. CWIN likewise argued the draft was "incomplete" because it referenced and relied upon exhibits that were missing and/or not yet finalized.

On December 30, 2019, Westlands filed a "Motion for Validation of Contract" seeking entry of a judgment in its favor on all issues. The motion alleged compliance with the Brown Act and included supporting evidence. Westlands also provided, for the first time in the litigation, an estimate of its anticipated repayment obligation—an amount exceeding $300 million. All defendants opposed the motion.

On February 26, 2020, the trial court issued a written tentative ruling to deny Westlands' motion. The motion was argued the following day, at which time counsel for Westlands provided a revised estimate of its repayment obligation, stating it was "in the $200 million range." Counsel was unable to provide a more specific figure, and the exhibits were either still unavailable or not produced for other unspecified reasons.

Despite the trial court's tentative ruling, Westlands and the Bureau proceeded to execute a revised and finalized version of the repayment contract (the WIIN Act contract). This occurred on February 28, 2020, one day after the motion hearing. However, the terms of the WIIN Act contract postponed its effective date until June 1, 2020. Due to the expiration of the sixth interim renewal contract on February 29, 2020, Westlands and the Bureau executed a seventh interim renewal contract to cover the period of March 1, 2020, through May 31, 2020. On June 11, 2020, after the WIIN Act

contract had taken effect, Westlands satisfied its repayment obligation to the Bureau by tendering the lump sum of $209,436,667, which the Bureau accepted as payment in full.

Meanwhile, in March 2020, the trial court denied Westlands' validation motion. Three reasons were given. First, the trial court interpreted Water Code section 35855 as authorizing validation actions only for executed contracts, not "proposed" contracts. The court did acknowledge, however, that Westlands was alternatively relying on Government Code section 53511 to invoke the validation procedures of Code of Civil Procedure section 860 et seq. Second, the so-called "proposed contract" was held to lack certain essential terms and exhibits. Third, Westlands had not proven its alleged compliance with the Brown Act.

The trial court also found that multiple defendants failed to answer to the complaint within the statutory deadline. The affected parties (respondents, Counties, and CWIN) appealed that portion of the ruling, which resulted in a stay of the proceedings from approximately August 2020 through May 2021. The findings of untimeliness were reversed by this court. (*Westlands Water Dist. v. North Coast Rivers Alliance* (Mar. 9, 2021, F081174) [nonpub. opn.]; *Westlands Water Dist. v. County of San Joaquin* (Mar. 9, 2021, F081181) [nonpub. opn.]; *Westlands Water Dist. v. California Water Impact Network* (Mar. 9, 2021, F081182) [nonpub. opn.].)

In September 2021, Westlands filed a "Renewed Motion for Validation Judgment." A supporting attorney declaration identified the "new or different facts" (Code Civ. Proc., § 1008, subd. (b)) as consisting of (1) execution of the WIIN Act contract in February 2020; (2) the Westlands Board's "adoption of Resolution 110-21 [on June 15, 2021,] confirming that the execution and delivery of [the WIIN Act contract] conformed fully with the authority granted by the Westlands Board in Resolution No. 119-19"; and (3) "[i]nformation responsive to specific questions regarding Brown Act compliance." Westlands also submitted legislative history materials to refute the trial court's interpretation of Water Code section 35855.

7.

All defendants opposed the September 2021 motion.  Respondents were among those who argued the WIIN Act contract was not the agreement originally presented for validation and, therefore, the issue of its validity was outside the scope of the litigation.  The trial court agreed, and the motion was denied.  Further proceedings were held to discuss the appropriate disposition of the case, and a judgment of dismissal was entered in March 2022.

Westlands appealed from the judgment of dismissal.  We will refer to that appeal by the lead case number, F083632.  As relevant here, this court concluded Westlands' validation action was authorized by Government Code section 53511 because it concerned a contract sufficiently related to government indebtedness.  (*Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th at p. 125.)  Having so concluded, this court did not reach the merits of the trial court's interpretation of Water Code section 35855.  (95 Cal.App.5th at p. 124.)  In affirming the judgment, this court determined "the contract presented for validation was missing an essential term and therefore uncertain, i.e., not sufficiently definite to be binding and enforceable."  (*Id*. at p. 129.)

The decision in F083632 was initially unpublished.  However, subsequent requests for publication (made by all four groups of defendants) were granted.  The California Supreme Court denied Westlands' petition for review, and the remittitur was issued on November 30, 2023.

### The Fees Dispute

In May 2022, while the appeal in F083632 was pending, respondents filed a motion for attorney fees pursuant to section 1021.5.  Westlands later stipulated to an extension of time for the Counties and CWIN to seek attorney fees, and their motions were filed in late July.  The fourth group of defendants did not seek attorney fees.  Westlands opposed all three motions.

The motions were heard on November 8, 2022, and a written decision was issued the following week.  The trial court's ruling addressed several requirements under section

1021.5, only three of which are at issue in this appeal:  (1) Were defendants "successful" parties in the validation action?  (2) Did defendants enforce or vindicate an "important right affecting the public interest"?  (3) Was a "significant benefit" conferred upon "the general public or a large class of persons"?

As to the first issue, the trial court said, "[T]here is no question that defendants were the 'successful parties' in the litigation, since they prevailed on their defenses and obtained a judgment from the court denying Westlands' request for validation of the purported contract."  Elsewhere the court acknowledged the defendants did not prevail on *all* their "defenses," i.e., their various arguments against validation.  But in reliance on case law holding partial success can suffice, the court concluded the defendants succeeded by persuading it to deny Westlands' validation motions and to dismiss the complaint.

The trial court's reasoning was less clear with regard to the second and third requirements.  Rather than attempt to paraphrase its analysis, we quote the bulk of the explanation provided:

> "In this case, defendants succeeded in obtaining a ruling from the court determining that the contract at issue did not qualify for validation under Code of Civil Procedure section 860, *et seq.*, or under Water Code section 35855.  In addition, the court found that the contract lacked material terms, which made it unsuitable for validation.  Furthermore, the court found that Westlands' [*sic*] had failed to show that its requested judgment complied with the Brown Act.  [Citation.]

> "Thus, the judgment obtained by defendants vindicated important rights affecting the public interest, including compliance with the requirements of the validation statutes, the Water Code, and the Brown Act.  But for defendants' successful opposition to the Complaint, Westlands would have likely obtained a judgment validating its contract despite its lack of compliance with the requirements of these statutes and the absence of material terms in the contract.  Such a judgment would have determined once and for all the validity of the contract, which would not have been subject to any further challenges other than a direct appeal of the judgment.  [Citation.]  Defendants' opposition also upheld the underlying policies of

9.

the Brown Act to provide transparency and accountability in public contracts. The amount of money at stake in the contract was also very substantial, as it involved over $350 million in financial obligations, as well as rights to over one million acre-feet of water. As a result, the court intends to find that defendants' opposition to the validation action resulted in the vindication of important rights affecting the public interest, as well as conveying a significant public benefit to the general public or a large class of persons."

Elsewhere in the written decision, the trial court added these remarks: "[T]he public gained significant benefits from defendants' opposition, as Westlands was not able to have its purported contract validated and thus protected from any further challenges in perpetuity, regardless of the serious defects in the contract. Again, the contract involved financial obligations worth hundreds of millions of dollars of public money, as well as rights to a million acre-feet of water. Thus, defendants' actions clearly benefitted the general public, or at least a large number of people."

Attorney fees were awarded to the Counties in the amount of $197,163.75. Respondents' fee award was $105,797.40. CWIN's fee award was $104,370.

In December 2022, Westlands filed a timely notice of appeal. Westlands' opening brief was filed on June 5, 2023, two months prior to this court's decision in F083632. All the respondents' briefs, as well as Westlands' reply brief, were filed after the F083632 decision was issued and published. (See *Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th 98 [publication status changed from unpublished to published on Sept. 1, 2023].) Westlands settled its fee disputes with the Counties and CWIN prior to the oral argument in this appeal.

## DISCUSSION

### I.    Applicable Law

Section 1021.5 "is aimed at encouraging litigants to pursue meritorious public interest litigation vindicating important rights and benefitting a broad swath of citizens, and it achieves this aim by compensating successful litigants with an award of attorney's

10.

fees [citations]." (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1155–1156.)  The statute provides, in relevant part:

> "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."  (§ 1021.5.)

The statutory language is understood to contain six elements.  "A superior court may award attorney fees to (1) a successful party in any action (2) that has resulted in the enforcement of an important right affecting the public interest if (3) a significant benefit has been conferred on the general public or a large class of persons, (4) private enforcement is necessary because no public entity or official pursued enforcement or litigation, (5) the financial burden of private enforcement is such as to make a fee award appropriate, and (6) in the interests of justice the fees should not be paid out of the recovery."  (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 390, fn. omitted.)  The party seeking an award under section 1021.5 has the burden to establish all applicable elements.  (*Vosburg v. County of Fresno* (2020) 54 Cal.App.5th 439, 450.)  As in this case, the sixth element is sometimes inapplicable.  (*Woodland Hills Residents Assn.*, *Inc. v. City Council* (1979) 23 Cal.3d 917, 935.)

Only the first three elements are in dispute.  Westlands does not address the fourth or fifth elements, and the sixth element is not applicable.  The amount of the award is not being challenged in this appeal.

## II.     Standard of Review

"We review an attorney fee award under section 1021.5 generally for abuse of discretion.  Whether the statutory requirements have been satisfied so as to justify a fee

11.

award is a question committed to the discretion of the trial court, unless the question turns on statutory construction, which we review de novo." (*Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 152.) Westlands' claims do not implicate the de novo standard. Our task is to determine whether the trial court abused its discretion in finding the elements of (1) success, (2) the enforcement of an important right, and (3) a significant benefit to a large class of persons.

The trial court is ordinarily "in the best position to determine whether the criteria have been met, and its determinations will not be disturbed '"unless the appellate court is convinced that it is clearly wrong."'" (*County of Orange v. Barratt American, Inc.* (2007) 150 Cal.App.4th 420, 441.) An abuse of discretion may occur if a ruling is based on irrelevant matter or factual findings "wholly unsupported by the evidence." (*Waterwood Enterprises, LLC v. City of Long Beach* (2020) 58 Cal.App.5th 955, 966.) "We may not reverse, however, simply because some of the court's reasoning was faulty." (*Kaldenbach v. Mutual of Omaha Life Ins. Co*. (2009) 178 Cal.App.4th 830, 844.) To warrant reversal, the erroneous reasoning must be critical to the ruling and the record must indicate "that a different result would have been probable if such error … had not occurred or existed." (Code Civ. Proc., § 475.)

## III. Analysis

### A. Success

As used in section 1021.5, "successful party" means the prevailing party in a legal action, i.e., "the party to litigation that achieves its objectives." (*Graham v. DaimlerChrysler Corp*. (2004) 34 Cal.4th 553, 571.) When a lawsuit is resolved by dismissal of the plaintiff's complaint, the defendant "is not necessarily a prevailing party, [but] it may be under some circumstances." (*Ibid*.) "In order to effectuate the purpose of section 1021.5, courts 'have taken a broad, pragmatic view of what constitutes a

12.

"successful party."'" (*Bowman v. City of Berkeley* (2005) 131 Cal.App.4th 173, 178, quoting *Graham*, *supra*, at p. 565.)

In the most basic sense, respondents succeeded by preventing Westlands from obtaining the validation judgment requested in its complaint. Disputing their status as "successful" parties for purposes of section 1021.5, Westlands focuses on respondents' broader objective of disrupting or altering its contractual relationship with the Bureau. Westlands relies on language from this district's opinion in *Ebbetts Pass Forest Watch v. Department of Forestry & Fire Protection* (2010) 187 Cal.App.4th 376: "[I]n determining whether a party is successful, the court must critically analyze the surrounding circumstances of the litigation and pragmatically assess the gains achieved by the action." (*Id*. at p. 382.)

It is no secret that respondents are opposed to Westlands' operations because of the environmental impact of the use of CVP water by Westlands' constituents. The parties have been embroiled in litigation for over a decade, in both state and federal court, regarding Westlands' ongoing contractual relationship with the Bureau. (*Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th at pp. 108–109, 111.) Respondents essentially admit they hoped Westlands' inability to obtain a validation judgment would alter the contractual relationship, and respondents' failure to achieve *that* goal is why Westlands insists they were unsuccessful.

As discussed, the draft agreement Westlands sought to have validated contained a provision stating the Bureau would not be bound by the agreement unless Westlands secured a validation judgment "confirming the proceedings on the part of [Westlands] for the authorization of the execution of [the contract]." The WIIN Act contract contains the same language. It now appears this was more of a boilerplate provision than a potentially deal-breaking requirement,[1] and Westlands submitted evidence to that effect in

_____

[1]As previously noted, the Bureau entered into the WIIN Act contract despite the trial court's tentative ruling to deny Westlands' first validation motion, and it later accepted

13.

opposition to the fee motions. Nevertheless, there is some distinction between the litigation objective of preventing Westlands from obtaining a validation judgment (which was achieved) and what respondents hoped would occur as a practical consequence of that outcome.

Respondents submit they "were limited to the sole remedy of preventing validation" and "won all the relief they had sought." Westlands counters that respondents and other defendants "each sought far more than mere dismissal of the action in their respective Answers and briefing." For example, respondents' answer included a request for a judgment "'invalidating [the Westlands Board's] actions … and the Converted Contract with the United States.'"

One test for determining whether a party is successful is to "look at the outcomes the parties sought in commencing the action, the situation before the party commenced the suit, and the situation today." (*People v. Investco Management & Development LLC* (2018) 22 Cal.App.5th 443, 458.) Although respondents may have had loftier goals than merely preventing Westlands from achieving *its* litigation objectives, their answer prayed for Westlands to "take nothing" by way of the validation complaint. They succeeded in preventing Westlands from obtaining any relief under the complaint.

"It is well settled that partially successful [litigants] may recover attorney fees under section 1021.5." (*Bowman v. City of Berkeley*, *supra*, 131 Cal.App.4th at p. 177.) Limited success "is a factor considered in determining the *amount* of any fee award," and the amount of fees awarded is not at issue here. (*Robinson v. City of Chowchilla*, *supra*, 202 Cal.App.4th at p. 393, italics added.) Because respondents achieved a basic litigation

Westlands' lump payment of over $209 million. The Bureau has also "reportedly taken the position that the WIIN Act contract '"will govern the rights and obligations of the United States and [Westlands] … notwithstanding [Westlands'] inability to obtain a final decree confirming its proceedings to authorize the execution of [the WIIN Act contract]."'" (*Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th at pp. 112–113.)

objective, the trial court had discretion to find the threshold requirement of success was met.

### B. Important Right Affecting the Public Interest

To satisfy the second requirement, the lawsuit must have "resulted in the enforcement of an important right affecting the public interest." (§ 1021.5.) In case law this element is sometimes phrased in terms of vindicating or effectuating an important public policy. (E.g., *Vasquez v. State of California*, *supra*, 45 Cal.4th at p. 250; *Serrano v. Priest* (1977) 20 Cal.3d 25, 45.) Section 1021.5 thus applies to rights that are "constitutional in origin," and "also to statutory rights as well as important public policies." (*California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 745; see *Grossmont Union High School Dist. v. Diego Plus Education Corp*. (2023) 98 Cal.App.5th 552, 576 ["The 'important public right' can have any legal source, 'constitutional, statutory or other'"].)

Attorney fees cannot be awarded "based on trivial or peripheral public policies." (*Marini v. Municipal Court* (1979) 99 Cal.App.3d 829, 836.) Likewise, "section 1021.5 does not afford relief for 'the enforcement of "any" or "all" statutory rights. [Rather] … the statute directs the judiciary to exercise judgment in attempting to ascertain the "strength" or "societal importance" of the right involved.'" (*Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1366, quoting *Woodland Hills Residents Assn.*, *Inc. v. City Council*, *supra*, 23 Cal.3d at p. 935.) It follows that ensuring statutory compliance in a given case does not necessarily rise to the level of enforcing an important right affecting the public interest.

The trial court found the important rights "vindicated" by respondents' litigation efforts were "compliance with the requirements of the validation statutes, the Water Code, and the Brown Act." Respondents were said to have "upheld the underlying policies of the Brown Act to provide transparency and accountability in public contracts."

No other reasons were given except that "[t]he amount of money at stake in the contract was also very substantial, as it involved over $350 million in financial obligations, as well as rights to over one million acre-feet of water." The trial court distinguished some of the cases cited in Westlands' opposition briefs, and in doing so noted "there were several serious defects in [Westlands'] purported contract that prevented the court from validating it."

There are two main policy considerations associated with California's validation statutes. First is the need for expediency in determining whether a public agency's decisions are lawful. (*Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 842.) "A key objective of a validation action is to limit the extent to which delay due to litigation may impair a public agency's ability to operate financially." (*Id*. at p. 843.) Second is the importance of procedural uniformity. "From their inception, the validation statutes were enacted to *standardize* the procedure by which public agencies established the validity of certain actions." (*Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 374; see *Katz v. Campbell Union High School Dist.* (2006) 144 Cal.App.4th 1024, 1028 ["The validation procedure is intended to provide a uniform mechanism for prompt resolution of the validity of a public agency's actions"].) Respondents did nothing to promote the first policy (two years and four months elapsed between the filing of the complaint and entry of judgment), but one could reasonably conclude they helped enforce the second policy.

"Public agency contracts involving financing and financial obligations are frequently the subject of validation actions." (*California Commerce Casino*, *Inc. v. Schwarzenegger* (2007) 146 Cal.App.4th 1406, 1422, fn. 15.) Westlands sought to have such a contract deemed binding and enforceable through the validation process despite the contract being in draft form and missing essential financial terms. Respondents challenged the propriety of this, and Westlands insisted it was perfectly acceptable. The

trial court and this court both sided with respondents, and their success could be viewed as the enforcement of an important right or policy affecting the public interest.

We next consider the Brown Act. "The policy underlying the Brown Act is that public boards and agencies exist to aid in the conduct of the people's business; the law is intended to mandate open and public actions and deliberations." (*Page v. MiraCosta Community College Dist.* (2009) 180 Cal.App.4th 471, 505.) As we discuss in the next part, the Brown Act has its own statutory scheme for the enforcement of this policy, and this was not a Brown Act case. But transparency in local government decisionmaking, and specifically regarding financial matters, is both important and broadly applicable in other contexts. (See *Travis v. Brand* (2023) 14 Cal.5th 411, 422 [generally noting "the important public policy of transparency"]; *International Federation of Professional & Technical Engineers*, *Local 21*, *AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 331 [citing "the strong public policy supporting transparency in government" in lawsuit involving disclosure of city employees' salaries].)

Furthermore, the evidence in the trial court record allowed it to reasonably conclude the policy of "transparency and accountability in public contracts" was not peripheral to the issues in the case. The answers to the complaint highlighted Westlands' failure to disclose the contract exhibits showing its repayment obligation to the Bureau. The Counties' opposition to Westlands' first validation motion was supported by a 12-page attorney declaration addressing "the incomplete and indefinite nature of the proposed contract Westlands [sought] to validate." Attached to the declaration were copies of letters respondents and others had sent to the Bureau during the public comment period regarding the anticipated contract and addressing the same issue. In a letter sent by respondents and CWIN in January 2020, they complained about the nondisclosure of "even the most rudimentary elements of the proposed draft contract and exhibits." The letter also said, "We urge you to deny the Westlands' contract conversion [*sic*] and [ask] that the process be restarted with proper public transparency …."

17.

Lastly, the second and third elements of section 1021.5 may "to some extent dovetail" when the significant benefit (the third element) is nonpecuniary. (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles*, *supra*, 22 Cal.App.5th at p. 1158.) In the next part we discuss the significance of the parties' dispute ultimately resulting in a published opinion. "The fact we or some other appellate court decides to publish an opinion does not conclusively establish the underlying action 'vindicated an important right' … [but] it is strong evidence on that question." (*Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 12; accord, *Doe v. Westmont College*, *supra*, 60 Cal.App.5th at p. 764 ["The publication of an opinion suggests that the case involved a matter of public importance"]; *Protect Our Water v. County of Merced* (2005) 130 Cal.App.4th 488, 495, fn. 8; see *Serrano v. Stefan Merli Plastering Co.*, *Inc.*, (2011) 52 Cal.4th 1018, 1029 [favorably citing *City of Los Angeles* but stating publication "is only one factor to be considered in that regard"].)

For the reasons discussed, the trial court permissibly found the validation action resulted in the enforcement of an important right affecting the public interest.

C.  The "Significant Benefit" Requirement

It was respondents' burden to show the lawsuit somehow conferred "a significant benefit, whether pecuniary or nonpecuniary … on the general public or a large class of persons." (§ 1021.5.) "The 'extent of the public benefit' from the lawsuit must be 'substantial,' but 'need not be great.'" (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles*, *supra*, 22 Cal.App.5th at p. 1158.) Examples from case law of significant, nonpecuniary benefits include:

> "(1) the enforcement of constitutional rights requiring that financing be equalized among school districts in California [citation]; (2) requiring compliance with the California Environmental Quality Act by proper submission of an environmental impact report [citation]; (3) ordering that a subdivision map conform to a general plan [citation]; (4) directing the adoption of an open space plan as required by statute [citation]; (5) [a] judgment vindicating rights to unemployment benefits [citation]; [and] (6)

18.

[a] judgment vindicating jail inmates' rights to reasonable exercise periods." (*Braude v. Automobile Club of Southern Cal*. (1986) 178 Cal.App.3d 994, 1011–1012.)

A trial court must "determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Woodland Hills Residents Assn.*, *Inc. v. City Council*, *supra*, 23 Cal.3d at pp. 939–940.) An appellate court "must review the entire record, paying particular attention to the trial court's stated reasons" for its decision. (*Coalition for a Sustainable Future in Yucaipa v. City of Yucaipa* (2015) 238 Cal.App.4th 513, 519–520.) For us the "pertinent question" is whether the trial court's reasoning, given all the facts, "is within the range of discretion" conferred upon it by section 1021.5. (238 Cal.App.4th at p. 520.)

The trial court's significant benefit analysis was basically as follows (paragraph breaks added for readability):

> "[T]he judgment obtained by defendants vindicated important rights affecting the public interest, including compliance with the requirements of the validation statutes, the Water Code, and the Brown Act. But for defendants' successful opposition to the Complaint, Westlands would have likely obtained a judgment validating its contract despite its lack of compliance with the requirements of these statutes and the absence of material terms in the contract. Such a judgment would have determined once and for all the validity of the contract, which would not have been subject to any further challenges other than a direct appeal of the judgment."

> "Defendants' opposition also upheld the underlying policies of the Brown Act to provide transparency and accountability in public contracts. The amount of money at stake in the contract was also very substantial, as it involved over $350 million in financial obligations, as well as rights to over one million acre-feet of water.…"

> "… Also, the public gained significant benefits from defendants' opposition, as Westlands was not able to have its purported contract validated and thus protected from any further challenges in perpetuity, regardless of the serious defects in the contract. Again, the contract involved financial obligations worth hundreds of millions of dollars of

19.

public money, as well as rights to a million acre-feet of water. Thus, defendants' actions clearly benefitted the general public, or at least a large number of people."

Although some policies underlying the Brown Act have broader application and are thus relevant to the benefit analysis, the issue of Brown Act compliance is not. Westlands aptly notes it was never found to have violated the Brown Act. Westlands affirmatively moved for a determination that its Board complied with all applicable laws, including the Brown Act, and the trial court ruled Westlands' evidence on the issue was insufficient. In other words, Westlands failed to meet its burden as the moving party.

This was not a Brown Act case. If it were, Westlands would have needed to be given the opportunity "to cure or correct the action alleged to have been taken in violation of the [Brown Act]" before incurring liability. (*Boyle v. City of Redondo Beach* (1999) 70 Cal.App.4th 1109, 1117, discussing Gov. Code, § 54960.1.) If the accused party cures or corrects the alleged violation after being given the opportunity to do so, "the action shall be dismissed and such cure or correction shall not be construed as evidence of a violation of the Brown Act." (*Ibid.*)

Furthermore, section 1021.5 "will not provide an independent basis for an attorney fee award when there are already existing specific statutory fees provisions that apply." (*Community Youth Athletic Center v. City of National City* (2013) 220 Cal.App.4th 1385, 1442.) The Brown Act contains its own attorney fee provision to compensate litigants who help enforce its requirements. (Gov. Code, § 54960.5; *Galbiso v. Orosi Public Utility Dist.* (2008) 167 Cal.App.4th 1063, 1077.) It would be improper to award attorney fees under section 1021.5 based on unadjudicated Brown Act compliance issues. (Cf. *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 690 ["because [Government Code] section 54960.5 expressly provides statutory authorization for recovery of attorney fees and costs for Brown Act violations, the trial court improperly relied alternatively on Code of Civil Procedure section 1021.5"].) To merely state in a nonprecedential ruling that parties subject to the Brown Act must comply with its

20.

provisions does not confer a significant benefit upon a large class, especially in a case where no findings of noncompliance were made.

The trial court's interpretation of Water Code section 35855 had no precedential value and was not considered on the merits in F083632. (*Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th at p. 124.) As such, its conclusion regarding whether the statute applies to "proposed contracts" did not satisfy the significant benefit requirement of section 1021.5. (See, e.g., *Norberg v. California Coastal Com.* (2013) 221 Cal.App.4th 535, 542 [agreeing with appellant "that the trial court's decision has no precedential value and, consequently, does not confer a substantial benefit, or any benefit, on a large class of persons"].) The trial court equivocated on whether Westlands could independently maintain its validation action under Government Code section 53511, but that issue was resolved in Westlands' favor on appeal. (*Westlands Water Dist.*, at pp. 124–125.) Because Westlands' compliance with the Water Code was a secondary issue confined to this particular case and nonessential to the outcome, the finding of noncompliance cannot reasonably be viewed as significantly beneficial to a large class of people.

The trial court's statement regarding "compliance with the requirements of the validation statutes" is unclear. The record does not indicate Westlands failed to *comply* with the validation statutes. Government Code section 53511, subdivision (a) permits local agencies to "bring an action to determine the validity of its … contracts … pursuant to Chapter 9 (commencing with Section 860) of Title 10 of Part 2 of the Code of Civil Procedure." Westlands' problem was not a failure to comply with Code of Civil Procedure section 860 et seq. The problem was its complaint sought relief that could not be granted because the contract in question was materially incomplete.

The trial court's remaining explanation concerned Westlands' failure to obtain a validation judgment: "[T]he public gained significant benefits from defendants' opposition, as Westlands was not able to have its purported contract validated and thus

21.

protected from any further challenges in perpetuity, regardless of the serious defects in the contract. Again, the contract involved financial obligations worth hundreds of millions of dollars of public money, as well as rights to a million acre-feet of water."

Westlands argues the trial court failed to appreciate that its refusal to validate the 2019 *draft version* of the repayment contract had no practical effect on Westlands' and the Bureau's subsequent execution of, and performance under, the 2020 WIIN Act contract. The subject matter of the case was the earlier draft, which is why the trial court denied Westlands' renewed validation motion in late 2021. It refused to consider the validity of the WIIN Act contract because the WIIN Act contract was not the agreement originally presented for validation with the complaint. (See *Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th at pp. 122–123, 133–134.)

In light of its contractual relationship with the Bureau before and after the validation action, Westlands argues respondents' efforts and the action itself "did not change the expenditure of a single dollar, the destination of a single drop of water[,] or have any impact on any of [respondents'] myriad of environmental claims …." The argument is quite cogent. How does anyone outside the litigation benefit if nothing has changed?

At the time of the fee motions, the uncontroverted evidence showed Westlands and the Bureau had been performing under the WIIN Act contract for over two years. Both Westlands and respondents also informed the trial court of the pending action in the United States District Court for the Eastern District of California (case No. 1:16-cv-00307) concerning the legality of the WIIN Act contract and other converted contracts between the Bureau and other CVP contractors. (See *Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th at pp. 109–111 [discussing "the federal court action"].) The real fight over the validity of Westlands' repayment contract was (and still is) taking place in a separate lawsuit.

Respondents have struggled to explain how the significant benefit requirement was met in this case. Their initial briefing of the issue did little more in substance than quote the trial court's ruling and claim its reasoning was sound. However, in response to our invitation for supplemental briefing, both sides have now addressed the significance of the published opinion in F083632, i.e., *Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th 98. Our analysis turns on the following principle: "[A] published opinion that clarifies and/or expands the law is probative of whether the fee claimant has satisfied the substantial benefit concept underlying section 1021.5." (*Schmier v. Supreme Court* (2002) 96 Cal.App.4th 873, 879; see, e.g., *McCormick v. Public Employees' Retirement System*, *supra*, 90 Cal.App.5th at pp. 1007, 1010; *Early v. Becerra* (2021) 60 Cal.App.5th 726, 739; *Robinson v. City of Chowchilla*, *supra*, 202 Cal.App.4th at pp. 397–398; *Wilkerson v. City of Placentia* (1981) 118 Cal.App.3d 435, 444–445.)

The main issue in F083632 was whether the trial court properly refused to validate the draft agreement presented with Westlands' complaint because it was missing essential terms. (*Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th at pp. 103–104, 125–132.) The necessity of discernable material terms for an agreement to be binding and enforceable is basic contract law. (See *id.* at pp. 126–127; Civ. Code, § 3390, subd. (e).) Yet Westlands insisted, both in the lower court and on appeal, that its draft repayment contract could be validated despite the absence of key terms regarding its financial obligations. There was scant authority relevant to that issue, which to our knowledge was a question of first impression.

Westlands argued its position was supported by *Metropolitan Water Dist. v. Marquardt* (1963) 59 Cal.2d 159. In rejecting the argument, this court said, "We do not read *Marquardt* to suggest a public agency may obtain a judgment confirming the validity of a contract, the primary focus of which is the accelerated repayment of a multimillion dollar debt, when the contract does not state the amount owed and/or the

amount to be repaid." (*Westlands Water Dist. v. All Persons Interested*, *supra*, 95 Cal.App.5th at p. 130.) It is easy to envision the potential for mischief if public entities were able to have incomplete financial agreements validated and later insert the essential financial terms once the contracts are immune from legal attack. (See Code Civ. Proc., § 870, subd. (a) [validation judgments are "forever binding and conclusive[] as to all matters therein adjudicated"].)

The published opinion in F083632 is reasonably viewed as "clarifying existing law and requiring it to be followed." (*McCormick v. Public Employees' Retirement System*, *supra*, 90 Cal.App.5th at p. 1010.) It also addressed an issue related to the important public policies of governmental transparency and ensuring uniformity in statutory validation procedures. Because the lawsuit resulted in the published opinion, the result may be viewed as having conferred a "significant benefit … on the general public or a large class of persons." (§ 1021.5.)

We are placed in an odd position by the trial court's finding of a different (and unclear) benefit. Also, section 1021.5 "requires the claimant to show that the principal action 'has resulted' in the enforcement of an important right and that a significant benefit 'has been conferred.' [Citation.] That showing cannot be made until the benefit is secure, in some cases after judgment is final." (*Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 679.)

"Normally an appeal reviews the correctness of a [ruling] at the time it is rendered and matters occurring later are irrelevant." (*Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 998.) There is an exception in section 1021.5 cases when a ruling is affected by subsequent appellate proceedings. This is illustrated by the circumstances in *Robinson v. City of Chowchilla*, *supra*, 202 Cal.App.4th 382.

In *Robinson*, an appeal of the underlying merits decision was pending when the trial court denied the plaintiff's request for attorney fees under section 1021.5. (*Robinson v. City of Chowchilla*, *supra*, 202 Cal.App.4th at pp. 388–389, 397; see *Robinson v. City*

*of Chowchilla* (2011) 202 Cal.App.4th 368, 374 (*Robinson I*) [merits appeal filed in January 2010].) The trial court found the "important right" and "significant benefit" requirements were not met, and the plaintiff appealed the denial of a fee award. (*Robinson v. City of Chowchilla*, *supra*, 202 Cal.App.4th at pp. 392–393.) As in this case, there was an overlap in the pendency of both appeals.

This district partially published its decision resolving a claim asserted by the defendant in the merits appeal, *Robinson I*, *supra*, 202 Cal.App.4th 368. In the fees appeal, the trial court's section 1021.5 ruling was reversed based on the appellate panel's conclusion the published opinion in *Robinson I* satisfied the second and third elements of section 1021.5. (*Robinson v. City of Chowchilla*, *supra*, 202 Cal.App.4th at pp. 396–399.) It was noted the trial court's denial of the fees motion was not based on "'all the pertinent circumstances'" because it did not know the litigation "would produce a published decision." (*Id*. at pp. 397–398.) The case was remanded for the trial court to evaluate the elements not decided in its prior ruling. However, the "important right" and "significant benefit" elements were not subject to reconsideration on remand; the appellate panel determined those issues itself. (See *id*. at pp. 387, 396 ["the motion for attorney fees cannot be denied on the ground that [plaintiff] failed to satisfy the 'important right' criterion"]; 399 ["we conclude that [plaintiff's] lawsuit satisfied the 'significant benefit' element"].)

Where a fee award would be based on the action resulting in a published opinion, the appellate court *may* determine the elements of section 1021.5 itself. (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 426–427; e.g., *City of Oakland v. Oakland Police & Fire Retirement System* (2018) 29 Cal.App.5th 688, 709–712.) We do not, and need not, make the "significant benefit" determination ourselves. It is sufficient that reasonable minds could reach opposite conclusions, i.e., that finding in favor of respondents would not be erroneous as a matter of law.

25.

"'The abuse-of-discretion standard requires us to uphold a ruling which a reasonable judge might have made, even though we would not have ruled the same and a contrary ruling would also be sustainable.'" (*Harman v. City and County of San Francisco* (2007) 158 Cal.App.4th 407, 428; accord, *Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1184 ["The trial court's ruling will not be reversed if reasonable people could disagree as to the proper outcome"].) We have upheld the trial court's findings on the first two elements; the other elements are not at issue, and Westlands has not challenged the amount of the award. A remand for the purpose of considering grounds upon which a fee award could be based, when the trial court has already concluded the recovery of fees is warranted, would be futile.

In its supplemental briefing, Westlands relies on *Leiserson v. City of San Diego* (1988) 202 Cal.App.3d 725. But the party seeking fees in *Leiserson* was unsuccessful in both his tort action for damages and an appeal of the merits judgment that resulted in a published opinion. (*Id.* at pp. 729–730.) The denial of fees under section 1021.5 was upheld in a second appeal because "his primary intent for pursuing the litigation was to advance his own personal economic interest," and he had "fail[ed] to prevail in any manner within his chosen context." (*Id.* at p. 738.)

The *Leiserson* case is superficially helpful to Westlands insofar as the appellate court said, "It would be patently absurd for entitlement to attorney's fees under section 1021.5 to be predicated upon our fortuitous decision" to publish the earlier opinion. (*Leiserson v. City of San Diego*, *supra*, 202 Cal.App.3d at p. 738.) However, the remarks about fortuity were made "in light of the narrow focus of Leiserson's tort pleadings." (*Ibid.*) And unlike in this case, the appellate court "conclude[d] as a matter of law Leiserson was not a 'successful' party within the meaning of section 1021.5." (*Id.* at p. 729.) Westlands' reliance upon *Leiserson* is directly tied to its argument that respondents were not successful in the validation action, which we have rejected.

While there is a strange irony in the fact there would be no published opinion had Westlands not appealed the earlier judgment of dismissal, such circumstances have been held to be "irrelevant." (*Doe v. Westmont College*, *supra*, 60 Cal.App.5th at p. 765.) It could be said respondents' "defense of the judgment resulted in a published opinion." (*Ibid.*) The *Robinson* case involved a similar scenario. There, both sides appealed from a judgment on the merits, but the partially published opinion satisfying the "important right" and "significant benefit" requirements only addressed a claim made by the party against whom fees were being sought. (See *Robinson v. City of Chowchilla*, *supra*, 202 Cal.App.4th at pp. 386–387 [fees appeal]; *Robinson I*, *supra*, 202 Cal.App.4th at pp. 370–371, 374–381 [merits appeal].)

## IV. Westlands' Request for Judicial Notice

Westlands has requested judicial notice of the complaint and judgment in Santa Clara Superior Court case No. 20CV367598, *Santa Clara Valley Water District v. All Persons Interested.* The unopposed request is hereby granted. (Evid. Code, § 452, subd. (d).) Those documents reflect that Santa Clara Valley Water District filed an uncontested validation action regarding a contract entered into with the Bureau pursuant to the WIIN Act, and a judgment was entered as prayed for in its complaint. Westlands contends the documents are "relevant to the appeal because they show that a contract in substantially the same form as the contract at issue in this case … was validated by the Superior Court of Santa Clara County on April 21, 2023."

We do not agree the Santa Clara case involved a contract "in substantially the same form" as the contract in this case. The contract attached to Westlands' validation complaint was missing exhibits concerning its financial obligations under the agreement. The contract attached to the complaint in the Santa Clara case was not missing any exhibits; it included exhibits pertaining to the plaintiff's financial obligations under the

agreement.  The judicially noticed records do not change our analysis of the fee dispute in this case.

## DISPOSITION

The trial court's decision to award attorney fees pursuant to Code of Civil Procedure section 1021.5 is affirmed.  The parties shall bear their own appellate costs. (See Cal. Rules of Court, rule 8.278(a)(5).)


                                         PEÑA, Acting P. J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.

28.